512

*In the Matter of the Welfare of* SHEREE L. GILLESPIE,
RODNEY GILLESPIE, *Petitioner.*

*McAdams & Schacht* and *Ronald K. McAdams,* for petitioner (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *John S. Biggs, Deputy,* for respondent.

MUNSON, J.—Petitioner, Rodney Gillespie, father of Sheree L. Gillespie, a minor, seeks review of an order permanently depriving him of his parental rights in his minor child.

We have consolidated petitioner's 20 assignments of error in which he contends the trial court erred in: (1) permit-

ting a subsequent hearing to be held pursuant to a premature petition; (2) considering testimony presented in the original hearing on permanent deprivation; (3) concluding it was not bound by the findings entered after the original hearing; (4) failing to place the minor child with the paternal grandparents; and (5) entering findings concluding that the father lacks the necessary stability to perform as the parent of Sheree Gillespie. We find each of petitioner's contentions to be without merit.

A petition alleging Sheree Gillespie, then 2½ months old, to be dependent, based primarily on physical injuries suffered by the child, was granted June 5, 1973. She was placed in temporary foster care under the supervision of the Department of Social and Health Services.

On April 12, 1974, the juvenile department of Walla Walla County filed a petition alleging that, by reason of neglect and cruelty, Sheree Gillespie was a dependent child, necessitating permanent parental deprivation. A fact-finding hearing was held May 27, 1974; both parents were present and represented by counsel. On June 7, 1974, the trial court entered findings and conclusions stating that neither parent was then capable of having custody. The court ordered continued foster care for a period of 6 months. At the conclusion of that period, either parent could petition the court to show cause why they should have the child returned to either or both of them, or, the juvenile department could petition to permanently deprive the parents of the custody of said child.

Less than 3 months later, the child's mother, Sally Gillespie, moved to set a hearing on final disposition. She sought to have petitioner permanently deprived of the child's custody. She informed the court that if her request was granted, she would relinquish her parental rights; in the alternative, if the court refused to permanently deprive the father, she asked that custody be awarded to her. Thereafter, an affidavit of prejudice was filed against the judge who presided at the May hearing and another judge was assigned to hear the cause. On December 19, 1974, the

deprivation hearing commenced; the mother continued to be represented by counsel; the father chose to represent himself. Additionally, the paternal grandparents appeared in person and, through their attorney, now counsel for the petitioner, sought temporary custody of or permission to adopt the child.

Rodney Gillespie, who was married to Sally Gillespie September 30, 1972, was 18½ years old when their daughter Sheree Gillespie, was born March 18, 1973. He possesses a juvenile record consisting of taking a car without permission, running away from home, incorrigibility, violating curfew, and shoplifting. He committed a felony on December 18, 1974, the day prior to the commencement of the deprivation hearing. During the period in which the infant was in the custody of her parents, she suffered a broken leg, broken ribs, second-degree burns, an apparent cigarette burn on the finger, and burns inside the mouth. The trial court, in entering the findings now under review, stated it could not determine which of the two parents was responsible for the physical abuse to which the child had been subjected.

At the commencement of the December hearing, the court stated:

> If counsel is prepared to go ahead, with the stipulation we discussed in Chambers, to the use of the record that was made at the prior hearing by the Court, with the understanding that the Court will allow all of the participants to call witnesses and supplement that record as their judgment indicates it should be, then we can proceed.

At the conclusion of the presentation of evidence by the juvenile department, a motion was made to dismiss the petition for deprivation. The court, without ruling on the motion, continued the hearing until February 26, 1975. Further testimony was taken February 26, at the conclusion of which the court stated:

> THE COURT: I want to clarify the record to make certain there is no misunderstanding. Court and counsel are receiving three volumes of transcript from the hearing of

May 27, 1974, and if I am not mistaken it is the agreement of everybody that the Court will consider that the testimony given by these witnesses will be utilized in this hearing by way of the entire testimony in the record. This was done for the purpose of avoiding the necessity of recalling the witnesses, some have testified a second time, maybe a third time.

Is there any testimony by any of these witnesses that has been volunteered by any of the parties that you feel should be presented by personal appearance of those witnesses that could be better presented by personal appearance that you haven't called. . . . THE COURT: Mr. McAdams you have presented everything on behalf of your clients that you wish to present? MR. McADAMS: Yes, your Honor. THE COURT: I realize you do not technically represent Rodney Gillespie, nevertheless it is apparent that at some point his interest and his parents interests, who are your clients, have been parallel. Since he is not represented are you satisfied with the state of the record looking at it from his viewpoint? MR. McADAMS: Yes, your Honor, although I can not speak for him. THE COURT: You can't bind him but because of the parallel interest and because he does not have an attorney if it is evident something was not done that should be done I would like to hear about it.

We perceive from the record the petitioner was present when the court made both of these statements. No objections were made on either occasion when the court indicated it intended to consider the testimony given by the witnesses in the May 27, 1974, hearing.

On April 23, 1975, findings of fact and conclusions of law were entered which concluded that the father should be permanently deprived of his parental rights.

1

Petitioner does not contend that he was prejudiced by the premature filing of the petition in the subsequent action; the hearing did not commence until the 6-month period had expired. On the contrary, during the interim he had remarried and subsequently separated, and on the day prior to the second hearing date, had committed a felony. The period from May until December was intended to af-

ford the petitioner an opportunity to demonstrate his potential parental responsibility. The record evidences that any extension of that period of time would merely have served to further demonstrate the petitioner's irresponsibility; he was not prejudiced by the premature filing.

2

■ Petitioner's contention that the trial court erred in considering the testimony of the prior hearing is without merit. The court repeatedly informed the parties that it intended to consider the testimony of the prior hearing, unless there was an objection, but would allow additional live testimony should any person so desire. Rodney Gillespie, representing himself, after thorough discussion of the consequences thereof with the trial court judge, made no objection to the court's statement indicating its intention to review the testimonial transcript of the May 27 hearing:

■f I am not mistaken it is the agreement of everybody that the Court will consider that testimony given by these witnesses will be utilized in this hearing by way of the entire testimony in the record.

The petitioner's failure to object to this statement, which was invited on more than one occasion, precludes his complaint of error before this court.

3

The contention that the court erred in concluding it was not bound by the previous judge's findings and conclusions, is not well taken. The only finding previously made was that both parents were, at that time, incapable of having custody of the child. Assuming arguendo that the petitioner's contention is correct, we fail to see how he can be prejudiced in the present deprivation hearing when the court felt it was not bound by that finding.

4

■ Petitioner assigned several errors in relationship to the position afforded his parents during the proceedings. The elder Gillespies did not seek review of the trial court's decision; petitioner has no standing to represent their inter-

ests. The trial court properly concluded the elder Gillespies were not proper parties to the deprivation proceeding, but only to that stage of the proceedings which related to the determination of custody. *In re Maurer*, 12 Wn. App. 637, 530 P.2d 1338 (1975).

The findings of the trial court that awarding of custody to the parents of Rodney Gillespie would not be in the best interests and welfare of the minor child are supported by substantial evidence. We find no error.

5

Petitioner next contends the trial court erred in considering the incidents of physical abuse to the minor child in its determination of permanent deprivation. The contention is not well taken. The findings entered demonstrate that as to those incidents the court accepted petitioner's explanation and did not consider such in its determination.

Petitioner contends the trial court erred in considering his previous criminal activities. We disagree.

■ The court found that petitioner's criminal activity "reflects a pattern of instability and is highly relevant to his fitness to have custody."[1] *In re Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973), states:

---

[1]Finding of fact No. 7 states:

"That with respect to Rodney Gillespie the Court finds: That he has a genuine affection for the child and has consistently had an affection for her. That while he has an affection, the Court finds that Rodney Gillespie has not exhibited a love for the child in the sense that love requires sacrifice and the doing of things for the object of a person's love. However, the Court finds that in the area of affection and love, Rodney Gillespie's feelings do at least meet the minimal standards of society and his relationship to the child is not grounds for deprivation. That Rodney Gillespie has exhibited a degree of unstability which is shown by both his first marriage to Sally Gillespie, and following the dissolution of that marriage, his second marriage of short duration during the pendency of these proceedings, and his liaison with a third woman again during the pendency of these proceedings. That the Court finds Rodney Gillespie's work habits to be unacceptable and finds that if he had really wanted to find permanent employment during the pendency of these proceedings, he could have done so. That the Court finds that Rodney Gillespie's pattern of criminal activity reflects a pattern of instability and is highly relevant to his fitness to have

[A] parent's misconduct, even if criminal in nature, does not automatically support permanent child deprivation. By the same token, imprisonment, alone, does not necessarily justify an order of permanent deprivation. *In re Staat*, 287 Minn. 501, 178 N.W.2d 709 (1970). On the other hand, a parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated are all relevant to the issue of parental fitness and child welfare, as are [*sic*] the parent's conduct prior to imprisonment and during the period of incarceration.

We find the court's consideration of the petitioner's prior criminal activity to have been a proper consideration, relevant to the issue of parental fitness and the child's welfare. The trial court's finding that the criminal activity of the petitioner served to reflect such instability as would not be in the best interests and welfare of the minor child is supported by substantial evidence. We find no error.

Petitioner's conduct was not conducive to the best interests of the child. He produced no plan with any degree of definiteness that offered a realistic means by which he

---

custody. That in particular, Rodney Gillespie's apparent involvement in felonious activity the day before the December 19th, 1974 hearing, which the Court finds to have been an admission against interest and which the Court finds must have occurred since he has not disputed it, reflects instability. That while the Court accepts Rodney Gillespie's explanation of failure to support the child until December, 1974, the Court considers his failure to support the child since to be reflective to a pattern of instability. That the manner in which Rodney Gillespie's second marriage occurred and the manner in which he apparently acted on December 18th, 1974 were intended to perhaps fool the Court, the Court must consider the possibility that Rodney Gillespie is still attempting to fool the Court. That while the Court accepts Rodney Gillespie's explanation with regard to the injuries that occurred to the child while in Rodney and Sally Gillespies' custody and his explanation that he did not know how fast a child should develop, the Court finds that with respect to the minimum standards of proper parental care, Rodney Gillespie has not met them in the past and has not exhibited the ability to meet them in the immediate future. That Rodney Gillespie admits now that he is probably not ready for full care of the child. That in addition to the above problems, the Court finds that the evidence of assaultive behavior on the part of Rodney Gillespie is evidence of immaturity."

could raise and care for the child. He stated on more than one occasion that when custody was finally returned to him he would then begin a positive program of employment, improved environmental surroundings and care for the child. Until that time, he saw no need for such concern. This concept of his parental responsibility is only one more example of the totally unrealistic approach he took, not only to his personal problems, but to his parental responsibility.

He contends the court erred in concluding he was not fit to care for the child. He does not appreciate the relationship that exists between the concept of parental fitness and that which is intended to serve "the best interests and welfare of the child." Petitioner would have this court conceive of such as two separate and distinct tests, each to be applied in certain clearly defined circumstances. The paramount interest is that of the child's welfare. If the parent has not demonstrated the ability to act responsibly toward the child, it is not in the child's best interests to be in the parent's custody. Parental fitness is not determined by material or economic benefits, nor is desire alone sufficient. Here, petitioner's readiness to assume parental responsibility is totally rebutted by his conduct during the period of temporary deprivation. *Petition of New England Home for Little Wanderers,* ............ Mass. ............, 328 N.E.2d 854 (1975). The trial judge had the benefit of being personally present during these hearings, observing the witnesses' demeanor, and weighing the convincing power of their testimony and credibility. *In re Sego, supra.* We fine no error.

Lastly, petitioner contends the trial court erred in failing to state in the deprivation order that its conclusion was based on clear, cogent and convincing evidence. We find, as did the court in *In re Sego, supra* at 744, that "there is substantial evidence to support the findings of the trial court and that there is the requisite clear, cogent and con-

vincing evidence to support the order of permanent deprivation."

Judgment of the trial court is affirmed.

McInturff, C.J., and Green, J., concur.