[No. 2880–2.   Division Two.   April 18, 1979.]

*In the Matter of the Welfare of*
ANTONIO TARANGO.

*Laurel Smith* of *Evergreen Legal Services,* for petitioner.

*C. Danny Clem, Prosecuting Attorney,* and *Warren K. Sharpe, Deputy,* for respondent.

PEARSON, C.J.—Petitioner Claudia Bonner seeks review of the order of the Kitsap County Juvenile Court permanently depriving her of all parental rights and interest in

her son, Antonio Tarango, upon a finding that Tony is a dependent child as defined in RCW 13.04.010(2).

The petitioner challenges the juvenile court's determination that permanent deprivation is in Tony's best interests. Petitioner also challenges the sufficiency of the evidence to support the court's order of deprivation and argues that the deprivation statutes, RCW 13.04.010(2) and RCW 13.04-.140, are unconstitutionally vague. After reviewing the record, we affirm the order of permanent deprivation.

In 1972 petitioner moved from California to Washington with her three children, Tony, then aged 3, and two older daughters, Tina and Cynthia. She had become addicted to pain killing drugs following a serious accident and was unable to hold a permanent job. In 1973 the family settled in Port Orchard where petitioner worked intermittently at night as a waitress. She testified that she hired babysitters to care for the children when she was out, that she had full responsibility for household tasks, and always kept food in the house. However, Tina Tarango testified that she, Tina, had full responsibility for the care of the younger children, that the children were left alone while her mother worked or was otherwise out, there was never sufficient food in the house, and that her mother taught her to shoplift to obtain household necessities. Tina also testified that her mother was often under the influence of drugs, struck the children at these times, made Tina help her sell drugs, let Tony smoke marijuana, and allowed transients to live in the house. On cross-examination, Tina could point to only one incident of excessive discipline. Petitioner denied all Tina's accusations except drug dependency. She admitted that she had a drug habit during this period and used marijuana, amphetamines, and heroin as a result of the earlier accident but denied that her habit affected her care for the children.

In January 1974 petitioner was convicted on three counts of possession of controlled substances and served imprisonment time in Purdy Treatment Center and Western State Hospital, where she participated in a drug treatment program. She was released on parole as an outpatient in June

1975 and claims that she has not used or sold drugs since that date. Petitioner voluntarily placed Tony and the girls in foster care when she was first jailed in 1974. The family has not all lived together since that date. Since January 1975 Tony has lived with his present foster parents, Mr. and Mrs. Mondragon, where he has made an excellent adjustment.

After her release from Western State Hospital, petitioner attempted unsuccessfully to obtain permanent employment and job training. She attempted to reunite the family by taking Tina back with her for a short period in late 1975 and early 1976. Tina ran away from her mother's home and returned to foster care in May 1976. She testified that her mother still used drugs and shoplifted during this period. Petitioner strongly denied all these accusations. In June 1976 petitioner was arrested again after she sold narcotics to an undercover police agent. She was convicted of the unlawful delivery of a controlled substance. The conviction was upheld by this court in *State v. Bonner*, 21 Wn. App. 783, 587 P.2d 580 (1978). At the time of the deprivation hearing petitioner was imprisoned in Purdy Treatment Center. She testified that she still hopes to reunite the family after her release, that she has maintained communication with and visited Tony continually since he went into foster care, and that she loves all her children. Her love for Tony and her continued interest in him was not controverted by any of the State's witnesses.

Petitioner argues that the juvenile court erred in making its determination that permanent deprivation is in Tony's best interests since it considered testimony which compared petitioner's ability as a parent with the ability of his foster parents, the Mondragons.[1] A natural parent cannot be deprived of parental rights unless her conduct has

---

[1]In this assignment of error petitioner specifically challenges finding of fact No. 13 (that Tony does not relate to petitioner as his "primary parent"), finding of fact No. 14 (that he relates to the Mondragons as his "primary" or "real" parents), finding of fact No. 15 (that Tony "functions psychologically as a member of the Mondragon family"), and finding of fact No. 20, which states that it is in the

been such or the duty to care for and protect the child has been so violated that "such rights have been abdicated or forfeited." *In re May,* 14 Wn. App. 765, 768, 545 P.2d 25 (1976). *See also In re Petrie,* 40 Wn.2d 809, 811, 246 P.2d 465 (1952). The mere fact that a child may be better cared for or have more advantages in the home of another cannot be determinative of the court's decision to end the rights of the natural parents. *In re Schulz,* 17 Wn. App. 134, 139, 561 P.2d 1122 (1977). *See also In re Petrie, supra; Penney v. Penney,* 151 Wash. 328, 275 P. 710 (1929). However, once it has been found that a parent has forfeited her rights and duties toward the child by a consistent pattern of behavior demonstrating neglect of parental responsibilities, the concern of the court is whether a permanent deprivation order is in the best interests of the child. When the rights of the parent and the welfare of the child are in conflict, the welfare of the child must prevail. *In re Schulz, supra* at 139; *In re Price,* 13 Wn. App. 437, 439, 535 P.2d 475 (1975). The trial court is accorded broad discretion in determining the best interests of the child. *In re Schulz, supra* at 139–40.

■ Although the ultimate decision on whether deprivation is in the best interests of the child cannot be made upon a finding that the child has made a good adjustment to his foster parents, the potential for devastating psychological damage to the child attendant upon repeated custodial moves may be a factor in determining whether or not to enter a deprivation order after the child's natural parent has demonstrated a consistent pattern of neglect of her responsibilities as a parent. Once the court makes a determination that a child is dependent under RCW 13.04.010(2) and that indefinite foster care is foreseen, it may consider

---

best interests of Tony that he not be separated from the Mondragons. Finding of fact No. 20 provides in pertinent part: "It is in the best interest of Antonio Tarango that he not be separated from his 'parents,' the Mondragons. The uncertainty of his current situation—in limbo as a foster child—is the most psychologically damaging of the alternatives available, and it is in the best interest of Antonio Tarango that he live in a stable situation, where there is no 'threat' that he will be removed from those he regards as his real family."

the need for permanent placement with adoptive parents in making its ultimate determination on whether deprivation is in the child's best interests. *See In re Schulz, supra* at 141–42. In the present case, the court found that by her conduct and drug addiction petitioner is incapable of providing a home for Tony now or in the foreseeable future. It then found that it was in Tony's best interests that he not remain in limbo as a foster child. It was not error for the court to consider Tony's adjustment to his foster home and his relationship with his foster parents in making the ultimate determination of whether permanent deprivation, and a chance for permanent adoption, was in his best interests. The court's consideration of Tony's relationship with the Mondragons was not the determinative factor in its conclusion that permanent deprivation was in his best interests. Rather, it was properly considered as *a factor* by the court in making the ultimate determination of Tony's best interests and in concluding that deprivation was necessary.

Petitioner also challenges the sufficiency of the evidence supporting the deprivation order. A parent's interest in the custody and control of minor children is worthy of great deference, but the court's primary concern in a deprivation action is the welfare of the child. *In re Sego*, 82 Wn.2d 736, 738, 513 P.2d 831 (1973); *In re Green*, 14 Wn. App. 939, 945, 546 P.2d 1230 (1976); *In re Price, supra.* The standard of review for an order of permanent deprivation is "substantial evidence," meaning that there was clear, cogent, and convincing evidence showing the necessity for permanent deprivation to be highly probable. *In re Sego, supra* at 739; *In re Price, supra.* Criminal misconduct and imprisonment alone cannot justify a deprivation order but may be factors in determining a natural parent's ability to perform her parental obligations. *In re Sego, supra* at 740; *In re Gillespie*, 14 Wn. App. 512, 517–18, 543 P.2d 249 (1975). Petitioner's continued use of drugs, her repeated imprisonment for drug related offenses, her inability to end her association with the drug culture and assume parental responsibility for Tony, all support the deprivation order.

Further, the trial court found Tina Tarango's testimony to be more reliable than her mother's, and this court is bound by that determination. Therefore, Tina's accusations that petitioner neglected Tony's care in the 1972–74 period and committed acts of parental unfitness in 1975–76 also may be considered in support of the deprivation order.

■ Petitioner argues correctly that the record is uncontroverted that she loves Tony, has wished to reunite the family, and that no real evidence of physical abuse was presented. However, intentional malice toward the child on the part of the parent need not be shown to support a deprivation order when a parent is otherwise shown by her intentional actions to be unable to provide the attention and care necessary to the child's well being. *In re Price, supra* at 441; *In re Gillespie, supra.* When all the evidence is considered, the requisite quantum of proof supports the court's conclusion that petitioner's continued pattern of neglect of her parental responsibilities demonstrates that she is unable to assume the care for Tony now or in the foreseeable future, and that permanent deprivation is warranted.

■■ Finally, petitioner contends that the deprivation statutes, RCW 13.04.010(2)[2] and RCW 13.04.140,[3] are unconstitutionally vague in that they do not provide adequate notice of prohibited conduct and have no safeguards

---

[2]RCW 13.04.010 provides in pertinent part:

"For the purpose of this chapter the words 'dependent child' shall mean any child under the age of eighteen years:

". . .

"(2) Who has no parent, guardian or other responsible person; or who has no parent or guardian willing to exercise, or capable of exercising, proper parental control . . ."

[3]RCW 13.04.140 provides in pertinent part: "No dependent or delinquent child as defined in this chapter shall be taken from the custody of its parent, parents or legal guardian, without the consent of such parent, parents or guardian, unless the court shall find such parent, parents or guardian is incapable or has failed or neglected to provide proper maintenance, training and education for said child . . ."

against arbitrary enforcement. We agree that neither statute defines "proper parental control" or "is incapable or has failed or neglected to provide proper maintenance, training and education" with a degree of specificity that is desirable when such important rights are involved. However, prohibited conduct may be defined specifically by statute or by relevant case law. *See State v. Hull*, 86 Wn.2d 527, 537–39, 546 P.2d 912 (1976). Parental obligations have been defined in numerous cases to mean at a minimum: (1) expression of love and affection; (2) expression of concern for the child's well being; (3) duty to supply food, clothing and medical care; (4) duty to provide a home; (5) duty to provide social and moral guidance. *E.g., In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969); *In re Harney*, 19 Wn. App. 85, 88, 574 P.2d 395 (1978). Further, deprivation is limited to situations where a natural parent has by her conduct forfeited her rights and duties. *E.g., In re May, supra*. Since the meaning of parental responsibilities has been defined with sufficient specificity in case law so that persons of common intelligence need not guess the meaning of the prohibited conduct, the deprivation statutes are not unconstitutionally vague. *See, e.g., Chicago, M., St. P. & Pac. R.R. v. State Human Rights Comm'n*, 87 Wn.2d 802, 805, 557 P.2d 307 (1976).

The order of permanent deprivation is affirmed.

PETRIE and REED, JJ., concur.

Reconsideration denied May 14, 1979.

Review denied by Supreme Court September 7, 1979.