[No. 3586–7–III.   Division Three.   July 17, 1980.]

*In the Matter of the Welfare of* EVA ADA CLARK.

*Chancey Crowell* and *Whitmore, Warren, Bromiley & Crowell,* for appellant.

*Judy McCauley, Prosecuting Attorney,* for respondent.

Roe, J.—Jerry D. Clark appeals a trial court order permanently terminating his relationship with his 6–year–old daughter, Eva Ada Clark, thus making her eligible for adoption. We affirm.

On October 7, 1977, in Washington, Eva Ada's natural mother relinquished all of her parental rights and duties. The natural father could not be found. On December 11,

1978, Eva Ada was declared to be a dependent child. Mr. Clark was eventually located in Minneapolis, Minnesota, and, upon being contacted by the State, expressed a desire to gain custody of his then 4–year–old daughter, whom he had not supported, seen, or contacted in the previous 2 years. An interstate compact for home study was initiated, but it was unsuccessful because of Mr. Clark's nonparticipation. He lost contact with the juvenile department and failed to respond for several months to letters from the Department of Social and Health Services. He was later discovered to be in prison in Minnesota where he is serving a sentence of 3 to 20 years on two charges of aggravated robbery. He has no chance of parole until 1982. He had previously served time at McNeil prison in Washington, and there is a federal hold on him effective at the time he is released from the Minnesota prison.

In May of 1979, Clark was served in prison with a petition for termination of the parent–child relationship. At the hearing, his court appointed attorney asked for a continuance until Clark could be present to confront witnesses and to have an expert appointed to testify as to his ability to fulfill his parental responsibilities. There was no motion for discovery process such as interrogatories or a deposition which might have assisted the court in resolution of this problem. The motion was denied, and on August 3, 1979, the court entered an order terminating the parent–child relationship.

■ Clark first challenges the sufficiency of the evidence. Clear, cogent and convincing evidence is necessary to sustain an order permanently depriving a parent of the care, custody and control of his children, the equivalent of the "highly probable" test. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973). The duty of this court on review is to determine if there is the necessary quantum of proof to support the trial court's findings. From a review of the record, we are convinced that there is "substantial evidence" to support the findings in light of the "highly probable" test.

■ Clark also challenges both of the court's findings that the termination of the parent–child relationship is in Eva Ada's best interests, and that it is supported by clear, cogent and convincing evidence. This is at least partly a conclusion of law, and such findings will be treated as conclusions of law. *State v. Reader's Digest Ass'n,* 81 Wn.2d 259, 266–67, 501 P.2d 290 (1972).

The court further found that Eva Ada had been declared a dependent child because her father was incarcerated in a reformatory in Minnesota and was not available to take care of her, that he was not available to be offered services as provided by statute to facilitate a reunion between himself and Eva Ada, and that he remained in prison and has made no contact with the Department of Social and Health Services to inquire concerning the child's welfare.

■ ■ Finally, the court found that a continuation of the parent–child relationship would clearly diminish Eva Ada's prospects for early "immigration" (*sic*—integration?) into a stable and permanent home. In deprivation hearings, the child's welfare is the primary consideration. *In re Sego, supra.* The father has been imprisoned for convictions for at least two felonies. Mere imprisonment of the father is not sufficient of itself for an order of deprivation, but it is not a factor to be ignored. *In re Tarango,* 23 Wn. App. 126, 595 P.2d 552 (1979). Continued criminal activity on the part of the father, resulting in his absence and inability to care for his child, may be the equivalent of his abandonment of her, with his conduct expressing disregard for the child's welfare. He has had no contact with the child since she was 2 years old. Mr. Clark has remarried and his present wife is on welfare. Eva Ada has been in several foster homes, was thought to be hyperactive, and had been a difficult child with a previous family, so she was removed from it. She is now secure in her new home and is considered part of the family. Multiple foster home placements of these children with the inference of rejection can be devastating. This young child needs care and needs it now.

In evidence is a letter from Warren J. Kraft, M.D., of the Department of Pediatrics, Wenatchee Valley Clinic, directed to Betty B. Johnson in reference to Eva Ada, which states in part as follows:

Eva was seen here again in May of 1979. Her weight was 43 pounds. Her height was 42 inches. The foster parents think she may be hyperactive. After observing her behavior in the office and on examining her neurologically, I could not comfortably diagnose hyperactivity in this youngster. To me, the last five months in the present foster home have shown a remarkable improvement in Eva's appearance and overall behavior. I believe that her sometimes aberrant behavior is probably due to earlier emotional trauma and suspect that if she has reasonable stable surroundings for a while, she will continue to improve rapidly.

Typical of the concern shown for Eva Ada is a question asked of Mrs. Betty Johnson, a social worker:

McCAULEY: Betty, you are aware that this is a hearing to deprive Mr. Clark of his paternal rights as to Eva Ada Clark?

JOHNSON: Yes.

McCAULEY: What would be your recommendation, considering your long association with this child, to the Court?

JOHNSON: I almost panic at the thought of a little child who has been two years without a family and without any security. It's almost impossible to deal with a child's behavior problem or feelings of insecurity, to build ego strength in them, to make them feel like worthwhile people when they don't have a secure home and a family, and you can tell them that you do have. I feel that Eva is not only deserving, but certainly entitled, in that we all have a responsibility to get her in a permanent home. And we've been two years and haven't done that. I feel very badly about it.

McCAULEY: So your recommendation would be to deprive Mr. Clark?

JOHNSON: Yes.

These findings and the evidence adequately support the conclusion that the termination of the parent–child relationship will be in Eva Ada's best interests.

■ Clark next asserts that he was denied effective assistance of counsel because the trial court refused to continue the proceedings until he, Clark, could be present or until an expert could be appointed. Procedural due process requires that Clark be given notice and an opportunity to be heard or defend, and to have the assistance of counsel. *In re Martin*, 3 Wn. App. 405, 410, 476 P.2d 134 (1970); *see In re Sego, supra.* Clark does not contend that notice was not adequate and he was represented by court appointed counsel at all stages of the proceedings.

We find the trial court has done everything it could in this matter. Clark had the opportunity to appear both by a pro se brief and through his counsel. The court was apparently of the opinion that Clark could not be brought into the state because of his incarceration in Minnesota and because of the detainer placed on him by federal probation authorities. There is no evidence in the record that Clark made any attempts to be present at the hearing.

In *In re Coggins,* 13 Wn. App. 736, 537 P.2d 287 (1975), a putative father sought review of an order dispensing with the need for his consent in an adoption action. He was in prison at the time of the trial but had apparently not requested to be present. He was represented by an attorney. On appeal it was determined his absence was not prejudicial error.

Clark also assigns error to the trial court's consideration of matters not in evidence. During the hearing, the judge stated in reference to the child:

THE COURT: I see her in church regularly. She's a pistol, believe me. It says here that Dr. Kraft questioned whether she was hyperactive or not. If they'd have asked my opinion, I'd have definitely said yes, but they didn't.

The judge later stated:

We have a child, who from my own personal knowledge, living in Waterville as I do and attending the same church and that's my only relationship with the . . . family, I see this child as gradually turning from an animal into a controllable child.

In *In re Akers,* 22 Wn. App. 749, 753–57, 592 P.2d 647 (1979), the court reversed a child deprivation order because the judge had interviewed the children and taken testimony from a caseworker outside of court. In *Esmieu v. Schrag,* 15 Wn. App. 260, 265, 548 P.2d 581 (1976), the court set aside an exchange of property between a trust and the trustees. The court stated:

> Because of plaintiff's failure to notify the defendants that testimonial and documentary evidence in support of the proposed exchange would be presented to the court and the court's reliance on such evidence for its order approving the exchange, we must declare the November 18 order void.

*Esmieu v. Schrag, supra,* was affirmed at 88 Wn.2d 490, 563 P.2d 203 (1977), the court stating at page 497, "An order based on a hearing in which there was not adequate notice or opportunity to be heard is void."

We find the case at bench to be distinguishable from both *In re Akers, supra,* and *Esmieu v. Schrag, supra.* Both of those cases involved the judge's actual taking of testimony outside the court or presence of the other party, whereas in the case at bench, the judge merely stated personal observations of Eva Ada that he had made in church.

In the court's oral opinion it is stated:

> The record will show that I am familiar with *In Re: Sego* and to me there has been clear, cogent, and convincing evidence that to do otherwise than to deprive would be a miscarriage of justice and morally criminal to this child. . . . The only hope that this child has of leading a somewhat normal life is to get roots tied down and not be going from foster home to foster home waiting for her father to get out of jail. The basis on which I'm sure the . . . family have taken this child and are willing to work with it as hard as they have is hopefully they could be in line if the child were placed for adoption.

It does not appear that the judge based his ultimate determination upon personal observation, but rather, from the evidence, moved as he must have been, he felt compelled to note his personal observation. In this case as in all cases

tried to the court, the judge is presumed to disregard inadmissible evidence in reaching his decision. *In re Harbert,* 85 Wn.2d 719, 538 P.2d 1212 (1975). There is ample evidence in the record aside from the judge's personal knowledge to sustain the court's order of deprivation.

Clark's final assertion of error is that the court considered Eva Ada's adoptability in entering the order of permanent deprivation. The general rule is that consideration of adoptability of deprived children should not be considered in a deprivation hearing. *In re Akers, supra* at 757. *See In re Hendrickson,* 7 Wn. App. 485, 499 P.2d 908 (1972). However, once a determination of dependency has been made, the court may consider "the need for permanent placement with adoptive parents in making its ultimate determination on whether deprivation is in the child's best interests." *In re Tarango,* 23 Wn. App. 126, 130, 595 P.2d 552 (1979).

It cannot be gainsaid that in certain respects, in the transfers of dependent children from the natural parents to adoptive parents, there are at least interests of four parties to be considered. They are the natural parents, the child, the adoptive parents, and the State. Each has a positive interest in looking to the care of a dependent child. The trend is for a greater recognition of the fact that these impressionable and emotionally and psychologically fragile infants are not chattels or playthings or mere desiderata but have rights of their own which should be protected. They should be given a decent chance for fair development in life. They are entitled to protection from those forces which ignore the child's special needs and would submit them to the ungenerous demands of inadequate parents. *In re Frederiksen,* 25 Wn. App. 726, 610 P.2d 371 (1979). The increase in juvenile delinquency, increase in crime, and great increase in the number of maladjusted children can be traced in large part to the breakup of the home, the insecurity and anger, and lack of love for these rootless children.

The order of the trial court is affirmed.

McInturff, A.C.J., and Munson, J., concur.

Reconsideration denied August 7, 1980.

Review denied by Supreme Court October 24, 1980.