[No. 46600.  En Banc.  December 4, 1980.]

*In the Matter of the Welfare of*
SHEILA MARIE SUMEY.

*David D. Gordon,* for appellants.

*Kathryn Guykema,* for respondent.

*Harry F. Reinert* and *Luvern V. Rieke* on behalf of University of Washington Law School and *Slade Gorton, Attorney General,* and *Larry Watters, Assistant,* amici curiae.

UTTER, C.J.—This appeal was certified to this court by Division Two of the Court of Appeals to determine whether the residential placement procedures of RCW 13.32 violate due process by authorizing placement of a minor without a prior finding of parental unfitness.

Sheila Marie Sumey, the petitioner at trial, is the daughter of appellants Rolin and Laura Sumey. At the time of trial in August 1978, Sheila was 15 years old. In the years preceding the initiation of this action, a number of problems had developed between Sheila and her parents. The parents set several rules for Sheila's conduct, which she did not always follow. On a number of occasions, Sheila ran

away from home. Extensive family counseling was attempted, but was not successful.

In early June 1978, there was again conflict in the home and Mrs. Sumey began to believe that Sheila would once again run away from home. On June 17, Mrs. Sumey called the police to prevent Sheila from running away. The police placed Sheila in a receiving home on that day. The Department of Social and Health Services (DSHS) began to provide crisis intervention services to the family and on June 20, Mrs. Sumey signed a consent form stating that Sheila should be in receiving care.

The DSHS crisis intervention services did not succeed in reconciling the differences between Sheila and her parents. The DSHS staff concluded that Sheila could not be returned home at that time, and she remained in receiving care. On July 15, Sheila filed a petition for alternative residential placement with the Pierce County Juvenile Court, pursuant to RCW 13.32.020. A hearing on the petition was held, and the juvenile court concluded that: the family was in conflict; prior counseling and crisis intervention had failed to remedy that conflict; the conflict could not be remedied by continued placement in the home; and the reasons for the alternative residential placement were not capricious. The court approved the petition for alternative residential placement and ordered that Sheila be placed in a nonsecure licensed facility. The court provided for rights of visitation for Mr. and Mrs. Sumey. The case was set for review in 6 months to determine what had been accomplished in resolving the conflict and reuniting the family.

Mr. and Mrs. Sumey appealed the juvenile court order and challenged the constitutionality of RCW 13.32, the statutory authority for the order of alternative residential placement. Division Two of the Court of Appeals certified the appeal to this court.

RCW 13.32 was enacted in the 1977 legislative session and has since been repealed and replaced by RCW 13.32A. Laws of 1979, ch. 155. The challenged statutes in RCW 13.32 were part of the basic juvenile court act of 1977,

which established different procedures for dealing with three classes of children: (1) Children who are "runaways" and who have conflict in their family relationship (RCW 13.30, 13.32, 74.13); (2) Children who are abused, neglected, or abandoned by their parents (RCW 13.34); and (3) Children who commit crimes (RCW 13.40).

Under RCW 13.30.020, a child may be taken into limited custody when the parents report the child as a runaway or when a law enforcement officer believes that the child is in circumstances which constitute imminent and substantial danger to the child's physical safety. Once a child has been taken into limited custody, DSHS must offer crisis intervention services to the family. RCW 74.13.031(4). The statutes specify that DSHS must pursue a primary goal of attempting to reconcile the differences between parents and child, and effect the child's return to the family home. RCW 74.13.031(4). If a reconciliation cannot be achieved, then DSHS must find a living situation for the child that is agreeable to both parents and child. RCW 74.13.031(4).

If either the parents or the child do not agree with the current placement, then they or the child can petition the juvenile court under RCW 13.32 for an alternative residential placement. RCW 13.32.020, 74.13.031(4)(f). The set of statutes challenged in this case, RCW 13.32, govern the juvenile court procedures for alternative residential placements. RCW 13.32.020 confers upon the juvenile court a "special jurisdiction to approve or disapprove alternative residential placement or its continuation." The procedures that must be followed in a juvenile court hearing on a petition for alternative residential placement are set forth in RCW 13.32.030–.040. At the conclusion of a hearing, the juvenile court can place the child outside the parental home if it finds by a preponderance of the evidence that the petition is not capricious and that "there is a conflict between the parent and the child that cannot be remedied by counseling, crisis intervention, or continued placement in the parental home." RCW 13.32.040. If the court does order

residential placement, then the placement is only temporary and a review hearing must be held every 6 months to approve or disapprove the continuation of the placement. RCW 13.32.050. Throughout the 6–month period that the child is in the placement, DSHS must provide appropriate interim services to the child and family (RCW 13.32.050) with the ultimate goal of reuniting the child and parents (RCW 74.13.020).

RCW 13.32 thus establishes a means for providing social services to the family and nurturing the parent–child bond in a situation in which the family conflict, although extremely serious, has not as yet resulted in parental abuse, neglect, or abandonment of the child. The use of the RCW 13.32 procedure is predicated on the existence of family conflict of sufficient magnitude that the parents and child are unable to live in the same home even with the assistance of counseling or other rehabilitative social services. RCW 13.32.040. The procedure is founded upon a fundamental policy of preserving the relationship between parents and children. The legislature has specifically "declare[d] that the family unit is a fundamental resource of American life which should be nurtured" and that accordingly, "the family unit should remain intact in the absence of compelling evidence to the contrary." RCW 13.34.020. The RCW 13.32 procedure furthers these goals by requiring the employment of all feasible measures such as counseling and rehabilitative social services prior to removing the child from the home, and requiring the continuation of efforts to unite the family after the child has been removed from the home. RCW 13.32.040, 13.32.050.

Appellants Mr. and Mrs. Sumey contend that RCW 13.32 violates due process in that it authorizes residential placement of a child outside the parental home even though the parents have not been found to be unfit. Appellants argue that the constitutional right to care, custody and companionship of one's child requires that parents retain custody of their children until the parents have been found to be unfit.

■ The liberty and privacy protections of the due process clause of the Fourteenth Amendment establish a parental constitutional right to the care, custody, and companionship of the child. *See, e.g., Stanley v. Illinois*, 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972); *Meyer v. Nebraska*, 262 U.S. 390, 399, 67 L. Ed. 1042, 43 S. Ct. 625 (1923); *In re Myricks*, 85 Wn.2d 252, 253–54, 533 P.2d 841 (1975). This constitutionally protected interest of parents has been described as a "sacred right" (*Moore v. Burdman*, 84 Wn.2d 408, 411, 526 P.2d 893 (1974)), which is "'more precious . . . than the right of life itself.'" *In re Myricks, supra* at 254.

The parents' constitutional rights, however, do not afford an absolute protection against State interference with the family relationship. Although "[h]istorically, the natural parent's right to custody of a child . . . [was considered to be] absolute, barring a showing of unfitness . . . [g]rowing concern for the welfare of the child and the disappearance of the concept of the child as property has led to a gradual modification in judicial attitude." *In re Becker*, 87 Wn.2d 470, 477, 553 P.2d 1339 (1976). It is now well established that when parental actions or decisions seriously conflict with the physical or mental health of the child, the State has a parens patriae right and responsibility to intervene to protect the child. *See Parham v. J.R.*, 442 U.S. 584, 603, 61 L. Ed. 2d 101, 119, 99 S. Ct. 2493 (1979); *Wisconsin v. Yoder*, 406 U.S. 205, 230, 233–34, 32 L. Ed. 2d 15, 92 S. Ct. 1526 (1972). As we observed in *State v. Koome*, 84 Wn.2d 901, 907, 530 P.2d 260 (1975),

> Although the family structure is a fundamental institution of our society, and parental prerogatives are entitled to considerable legal deference . . . they are not absolute and must yield to fundamental rights of the child or important interests of the State.

*See also, e.g., In re Tarango*, 23 Wn. App. 126, 129–30, 595 P.2d 552 (1979), *review denied*, 92 Wn.2d 1022 (1979). Thus, in assessing the constitutionality of a procedure which infringes upon parents' rights to the care, custody,

and companionship of their children, it is necessary to ascertain the proper balance between the parents' constitutional rights and the State's constitutionally protected parens patriae interest in protecting the best interests of the child.

■ The central question in this case, therefore, is whether the interests of the State and child which underlie the RCW 13.32 procedure justify the degree of abridgement of parental constitutional rights which stems from an RCW 13.32 residential placement.

In proceedings for child neglect, abuse, or abandonment, where the potential consequence is termination of parental rights on a temporary or permanent basis, the ultimate nature of the abridgement of parental constitutional rights necessitates an extremely substantial justification. Thus, a parent's constitutional rights to care, custody and companionship of the child can only be terminated if the evidence shows that the child has suffered or is likely to suffer physical, mental or emotional harm as a result of the parents' conduct. *See Roe v. Conn*, 417 F. Supp. 769, 779–80 (M.D. Ala. 1976) (3–judge court); *Alsager v. District Court*, 406 F. Supp. 10, 26 (S.D. Iowa 1975), *aff'd*, 545 F.2d 1137 (8th Cir. 1976). *In re Tarango, supra* at 129–30. However, a residential placement under RCW 13.32 does not infringe upon parental rights as severely as does a dependency adjudication or termination of parental rights under RCW 13.34. An adjudication of dependency (on grounds such as parental abuse, neglect, or abandonment) can result in placement of the child in a foster home and transfer of certain legal rights and duties to the foster parents (*see* RCW 13.34.130; JuCR 3.8(e)), and can ultimately result in full termination of parental rights if the parents do not correct the behavior which led to the finding of dependency. RCW 13.34.180; JuCR 3.4(c). In contrast, a residential placement under RCW 13.32 does not result in the transfer of any legal rights and duties to the custodians of the child and such a placement cannot serve as a basis for a subsequent termination of parental rights. The full termination of parental

rights under RCW 13.34 is certainly more severe than an RCW 13.32 placement, for the termination severs "all rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support existing between the child and parent". RCW 13.34.200.

Under RCW 13.32, the basis for the limited degree of State infringement upon parental rights is the existence of "a conflict between the parent and child that cannot be remedied by counseling, crisis intervention, or continued placement in the parental home." RCW 13.32.040. Thus, a minor can be temporarily removed from the parental home pursuant to RCW 13.32 only if the family is experiencing such severe conflict that temporary removal is the only feasible means for providing assistance to the family. In every case in which RCW 13.32 residential placement is ordered, the trial court must specifically find, as did the court in this case, that the currently existing family conflict is so extreme that it cannot be remedied by less restrictive alternatives such as counseling or crisis intervention services. RCW 13.32.040.

It must be determined, therefore, whether the RCW 13.32 basis for a limited infringement upon parental rights represents a constitutionally adequate balance between the rights and interests of the parents, child, and State. *Cf. State v. Koome, supra* at 907–08; *cf. also Parham v. J.R., supra* at 117–21. On one side of the balance is the parents' constitutional right to care, custody and companionship of the child. On the other side is the State's constitutionally protected parens patriae interest in protecting the physical and mental health of the child. The RCW 13.32 process enables the State to safeguard the mental and emotional health of the child by removing him or her from a situation of family conflict that is so extreme that the parents and child are unable to live together even with the aid of counseling. The procedure also allows the State to protect the physical health of children like the minor in the present case, who are driven by the family conflict to run away

from home and expose themselves to the physical dangers that attend running away. The State also has an interest in employing the RCW 13.32 procedure to end family problems and strengthen parent–child relationships. The legislature has declared that "the family unit is a fundamental resource of American life which should be nurtured." RCW 13.34.020. The RCW 13.32 residential placement procedure enables the State to resolve family conflict and nurture the family unit before the problems are so severe as to require the drastic step of terminating parental rights on a temporary or permanent basis.

The interests of the State and child supporting the RCW 13.32 procedure are sufficient to justify the degree of intrusion upon parents' constitutional rights. The interests of the State and child which have been identified are extremely weighty for they concern the welfare and best interests of the child as well as the strengthening of the family unit. The degree of intrusion upon the parents' rights is relatively minor in that the parents retain custody over the child, the placement outside the home is designed to be temporary and to end as soon as the family conflict has been resolved through rehabilitative social services, and the temporary placement outside the home cannot serve as the foundation for a subsequent termination of parental rights. Moreover, the RCW 13.32 procedure can only be invoked if there has already been conflict between the parents and child and it has been determined that this conflict cannot be resolved by less restrictive alternatives such as counseling or crisis intervention services. On balance, the substantial interests of the State and child are sufficient to justify the limited infringement upon the parents' rights.

Accordingly, it must be concluded that appellants' due process challenge to RCW 13.32 is without merit. The ruling of the trial court is affirmed.

STAFFORD, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., and HOPP, J. Pro Tem., concur.

BRACHTENBACH, J. (dissenting)—The majority sanctions a serious intrusion into the fundamental, constitutionally protected, parent–child relationship. In so doing, the majority approves a statute which is fatally defective because it lacks sufficient criteria to justify such trammeling of parental rights. If the record in this case justifies removal of a child from the family home, it means the Department of Social and Health Services and a recalcitrant juvenile can cause a child to be taken from the home of fit and proper parents whose only "fault" was to try to impose reasonable behavioral standards upon their minor child.

The nature of the constitutionally protected parent–child relationship has been clearly articulated by the United States Supreme Court, this court and other courts. In *Stanley v. Illinois,* 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972), the court stated:

> The private interest here, that of a man in the children he has sired and raised, *undeniably warrants deference and, absent a powerful countervailing interest, protection.* It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children "come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements." *Kovacs* v. *Cooper,* 336 U. S. 77, 95 [93 L. Ed. 513, 69 S. Ct. 448] (1949) (Frankfurter, J., concurring).

> The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed *"essential," Meyer* v. *Nebraska,* 262 U. S. 390, 399 [67 L. Ed. 1042, 43 S. Ct. 625] (1923), *"basic* civil rights of man," *Skinner* v. *Oklahoma [ex rel. Williamson],* 316 U. S. 535, 541 [86 L. Ed. 1655, 62 S. Ct. 1110] (1942), and *"[r]ights far more precious . . . than property rights," May* v. *Anderson,* 345 U. S. 528, 533 [97 L. Ed. 1221, 73 S. Ct. 840] (1953). "It is *cardinal* with us *that the custody, care and nurture of the child reside first in the parents,* whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince* v. *Massachusetts,* 321 U. S. 158, 166 [88 L. Ed. 645, 64 S.

Ct. 438] (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer* v. *Nebraska, supra,* at 399, the Equal Protection Clause of the Fourteenth Amendment, *Skinner* v. *Oklahoma, supra,* at 541, and the Ninth Amendment, *Griswold* v. *Connecticut,* 381 U. S. 479, 496 [14 L. Ed. 2d 510, 85 S. Ct. 1678] (1965) (Goldberg, J., concurring).

(Italics mine.)

> The family entity is the core element upon which modern civilization is founded. Traditionally, the integrity of the family unit has been zealously guarded by the courts. The safeguarding of familial bonds is an innate concomitant of the protective status accorded the family as a societal institution.

(Citations omitted.) *In re Luscier,* 84 Wn.2d 135, 136, 524 P.2d 906 (1974). *In re Myricks,* 85 Wn.2d 252, 533 P.2d 841 (1975), confirmed that the fundamental right of parents to custody necessitates strict compliance with due process requirements even in a temporary deprivation hearing.

In ruling upon the right of an indigent parent to assistance of counsel when the State attempts to declare a child a temporary ward of the court, the Michigan Supreme Court observed:

> The interest of parent and child in their mutual support and society are of basic importance in our society and their relationship occupies a basic position in this society's hierarchy of values. Clearly any legal adjustment of their mutual rights and obligations affects a fundamental human relationship.

*Reist v. Bay Circuit Judge,* 396 Mich. 326, 341, 241 N.W.2d 55 (1976).

> Because the right to raise one's children is fundamental, any proceeding by the State to deprive a person of that right must take place under the aegis of the equal protection and due process clauses of the Fourteenth Amendment.

*Pima County v. Howard,* 112 Ariz. 170, 171, 540 P.2d 642 (1975).

Where fundamental rights are involved, state interference may be justified only by a compelling state interest and such interference must stem from legislative enactments narrowly drawn to express only the legitimate state interest involved. *Roe v. Wade,* 410 U.S. 113, 155, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973).

With this background, let us examine the statute and facts applicable in this case. The statute permits the juvenile, acting unilaterally, to petition for alternative residential placement. Former RCW 13.32.020. The essential finding necessary for alternative residential placement is that the family is in "conflict". Absolutely no definition, standard, nor guideline is provided to define "conflict". Apparently a child can create the conflict by refusing to obey reasonable parental directions and be moved to an alternative residential placement more to his or her liking.

What criteria must be satisfied before the juvenile court is empowered to deprive the parents of the physical custody of their child? What narrowly drawn standard, expressing a compelling state interest, allows the court to sever, in 6-month increments, the parents' fundamental right to the companionship, supervision, and control of their child?

The court need only find, by a preponderance of the evidence, that the reasons for the child's request for alternative placement are not capricious and that there is a conflict between the parent and the child that cannot be remedied by counseling, crisis intervention, or continued placement in the parental home. RCW 13.32.040.

If "capricious" is used in a popular sense, it denotes: "Marked or guided by caprice: given to changes of interest or attitude according to whims or passing fancies: not guided by steady judgment, intent, or purpose . . ." *Webster's Third New International Dictionary* (1963). "Capricious" has been legally defined in various ways: *e.g.,* apt to change suddenly, freakish, whimsical, humorous (*United States v. Carmack,* 329 U.S. 230, 244 n.14, 91 L. Ed. 209, 67 S. Ct. 252 (1946)); or freakish, whimsical, fickle, changeable, unsteady, and arbitrary. (*Webb v. Dameron,*

219 S.W.2d 581 (Tex. Civ. App. 1949)). *Accord, Bundo v. Walled Lake,* 395 Mich. 679, 238 N.W.2d 154 (1976). *Cf. Hayes v. Yount,* 87 Wn.2d 280, 286, 552 P.2d 1038 (1976) ("arbitrary and capricious" has acquired a special meaning in administrative law, a meaning which is not applicable here). Noncapriciousness is an imprecise criterion too easily satisfied, and therefore it cannot be the standard by which substantial interference with cherished, fundamental, parental rights zealously guarded by the constitution is justified. This intrusion into parental rights is exacerbated by the light evidentiary burden which must be met to establish a lack of capriciousness (preponderance of the evidence).

If the court finds that the noncapriciousness standard is satisfied, it need then only determine that an undefined "conflict" which cannot be remedied by certain actions is present. Upon what facts did the court find a "conflict" in this case? The juvenile signed a form petition which alleged in material part:

> That said child is in conflict with his/her parents as defined in RCW 13.32 [where it is not defined] as follows: . . . that said child refuses to endure the physical and verbal fighting and friction within the home and refuses to return; that counseling has been utilized . . .; that said child would like to live with [a named family] or in an alternative foster home.

Next: "Said conflict cannot be remedied by counseling, crisis intervention or continued placement in the parental home."

Petitioning juvenile was asked at the court hearing the following:

> Q. Could you please tell us why you believe there is a conflict in that home?
> A. I just feel that there's a communication gap there . . .

That is the sum and substance of the petitioner's testimony upon which she was taken from her parents' custody over their objections.

What standards of conduct had these parents laid down which led to this "lack of communication"? They asked

their 15–year–old daughter not use drugs, or associate with those who had furnished drugs, that she not use alcohol, that she not be sexually active, and that she be in at a reasonable hour. Because of the daughter's unwillingness to follow these obviously reasonable standards, the parents are summarily deprived of custody and the best opportunity to resolve these problems within the family.

There was no claim or proof of unfitness or neglect by the parents. There was no claim or proof of any imminent threat of harm or danger to this 15–year–old. The only manifestation of any potential harm to the child was her threat to run away. She had done so once in the past and occasionally stayed overnight with friends without permission.

Based upon this skimpy petition and proof, the parents were deprived of custody for a minimum of 6 months (if the "conflict" was not resolved earlier), and possibly for additional periods of 6 months thereafter, following review by the court. RCW 13.32.050.

The court's justification for this extensive deprivation of fundamental parental rights consisted merely of conclusory findings of fact which met the unconstitutionally vague and inadequate standards of the statute:

> That the conflict cannot be remedied by counseling, crisis intervention or continued placement in the home.

Finding of fact No. 6.

> That the evidence establishes by a preponderance that the reasons for the request of alternative residential placement are not caprious [sic].

Finding of fact No. 7.

> That the parents of the minor child are willing to provide for her in their home.

Finding of fact No. 8.

> That the parents of the minor child have continuously sought reconcilation [sic] with and the return of the child and they have not abused or neglected the child.

Finding of fact No. 9.

It is interesting to note that in the 1979 amendments the legislature recognized the very points raised in this dissent. Laws of 1979, ch. 155, § 15 (codified as RCW 13.32A.010). It specifically declared that the family unit should remain intact *in the absence of compelling evidence to the contrary.* It provided:

> The legislature finds that within any group of people there exists a need for guidelines for acceptable behavior and that, presumptively, experience and maturity are better qualifications for establishing guidelines beneficial to and protective of individual members and the group as a whole than are youth and inexperience. The legislature further finds that it is the right and responsibility of adults to establish laws for the benefit and protection of the society; and that, in the same manner, the right and responsibility for establishing reasonable guidelines for the family unit belongs to the adults within that unit. The legislature reaffirms its position stated in RCW 13.34.020 that the family unit is the fundamental resource of American life which should be nurtured and that it should remain intact in the absence of compelling evidence to the contrary.

RCW 13.32A.010.

The majority characterizes the alternative residential placement as a minor infringement by the State upon parental rights. I disagree. The child may be removed from the parents' home for an initial period of 6 months. After review, the placement may be extended for additional periods of 6 months each. The balance of a child's minority might well be spent in alternative placement solely because the child refuses to try to cope with reasonable parental controls. Deprivation of the physical presence of the child and therefore deprivation of the in–home opportunity to guide and influence the child during these critical years, is a serious intrusion upon the parents' fundamental right to raise and nurture their offspring.

I would hold that the statute, on its face and as applied in this case, violates the the due process rights of the parents. On its face, the statute permits a serious infringement of a fundamental and scrupulously guarded constitutional

right without providing adequate safeguards to justify such infringement. As applied, the facts and the findings in this case do not demonstrate a compelling state interest being exercised pursuant to a narrowly drawn legislative enactment.

ROSELLINI and HICKS, JJ., concur with BRACHTENBACH, J.