[No. 4261–8–III.   Division Three.   December 15, 1981.]

*In the Matter of the Welfare of*
BABY GIRL COVERDELL.

LAURA LANGSTON, *Appellant,* v. ALICE COVERDELL,
ET AL, *Respondents.*

*Ronald K. McAdams* and *McAdams & Ponti,* for appellant.

*Albert J. Golden* and *Golden & Knowlton,* for guardian ad litem.

*Aaron Horowitz, H. N. Woolson, Prosecuting Attorney,* and *Terry R. Nealey, Deputy,* for respondents.

McINTURFF, C.J.—Laura Langston, the foster parent of 3–year–old Christina Coverdell, appeals from a denial of

her motion for joinder and reconsideration.

Christina Robyn Coverdell was born September 27, 1978, to Alice and Roscoe Coverdell.[1] Two days after birth, the child was declared dependent and placed with Miss Langston, a licensed shelter care person.[2] Mrs. Coverdell filed a petition for habeas corpus on October 2, 1978, but the court, while granting an order requiring return, ordered that the child remain in shelter care until further order of the court due to substantial marital disharmony in the Coverdell home. The Coverdells separated in July 1979 and were subsequently divorced in January 1980. Mrs. Coverdell petitioned for the return of her child in May 1980. The hearing on that petition and DSHS's petition for dependency was held in September 1980. The trial judge found Christina to be a dependent child but ordered her to be returned to her mother with continued supervision by DSHS. Prior to the entry of findings and the order, Miss Langston moved the court for joinder pursuant to CR 19 and CR 20. This motion was denied and she subsequently appealed the denial.[3]

The issue on appeal is whether Miss Langston, in her quest for custody, has a right to intervene in the depen-

---

[1]Mr. and Mrs. Coverdell were parents of two other children. The first had been declared dependent in Whitman County in 1976. The Coverdells' parental rights to the second child were terminated by the State of Oregon on January 9, 1979.

[2]Miss Langston is a pediatric nurse who provides shelter care for the Department of Social and Health Services (DSHS). She has cared for Christina since she was removed from the hospital shortly after birth and has custody during this appeal. She has become very attached to Christina and has expressed a desire to adopt the child.

[3]After her request for joinder was denied, Miss Langston filed a claim under RCW 26.09.180 which states in part:

   (1) A child custody proceeding is commenced in the superior court:
   . . .
   (b) By a person other than a parent, by filing a petition seeking custody of the child . . . but only if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian.
The action has been stayed pending her appeal to this court.

dency proceedings. She contends that since she has stood in loco parentis for 3 years she is best qualified to testify as to Christina's welfare.

We begin by noting RCW 13.34.130 furnishes the court guidelines to follow in determining the best interests of Christina:

> If, after a fact–finding hearing pursuant to RCW 13.34.110 . . . it has been proven by a preponderance of the evidence that the child is dependent . . . the court shall enter an order of disposition pursuant to this section.
>
> (1) The court shall order one of the following dispositions of the case:
>
> (a) Order a disposition other than removal of the child from his or her home, which shall provide a program designed to alleviate the immediate danger to the child . . .
>
> (b) Order that the child be removed from his or her home . . . only if:
>
> (i) There is no parent or guardian available to care for such child; or
>
> (ii) The child is unwilling to reside in the custody of the child's parent, guardian, or legal custodian; or
>
> (iii) The parent, guardian, or legal custodian is not willing to take custody of the child; or
>
> (iv) A manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed from the home.

The parties present at the hearing, *i.e.*, Department of Social and Health Services (DSHS), the guardian ad litem and Mrs. Coverdell were adequate for a proper application of the above guidelines. Miss Langston's interest in Christina's welfare is commendable, and although she was never prevented from testifying, she was denied the right to be a party. Obviously, the guardian ad litem and DSHS were aware of Miss Langston's identity and could have presented her testimony as part of their case in chief, but declined to do so. We do not interfere with that decision, nor find an abuse of discretion.

A dependency proceeding initially attempts to reconstruct the family unit. RCW 13.34.120. If these efforts fail a

hearing is held to terminate parental rights and make disposition of the children. RCW 13.34.180. Miss Langston contends she should have been allowed to intervene as a matter of right during the initial phase.[4] We disagree.

Miss Langston has shown neither a right to intervene under a statute nor that she possesses a legal interest not adequately represented by DSHS *or the guardian ad litem.* Her reliance upon *In re Maurer,* 12 Wn. App. 637, 530 P.2d 1338 (1975); *In re Schulz,* 17 Wn. App. 134, 561 P.2d 1122 (1977); *In re Tarango,* 23 Wn. App. 126, 595 P.2d 552 (1979) and *In re Hansen,* 24 Wn. App. 27, 599 P.2d 1304 (1979) is misplaced. The first three of these cases dealt with petitions for deprivation and determined the parents should be deprived of their rights to their children. In the instant case, we are dealing only with a petition in dependency—Miss Langston's fitness as a foster mother was not a relevant factor to be considered under RCW 13.34.130. Although our decision in *In re Hansen, supra,* concerned the standing of foster parents to be heard during a depen-

---

[4]Miss Langston filed a motion for joinder. As noted by the commissioner's ruling filed March 13, 1981, the request to intervene was misnomered as a motion for joinder. CR 24 (intervention) allows a person who is not initially a part of a lawsuit to enter the matter on his own initiative. CR 24 provides:

(a) . . . Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) . . . Upon timely application, anyone may be permitted to intervene in an action:

(1) when a statute confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirements, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

dency proceeding, they were *legal guardians* and *parties* who petitioned in dependency. Here, DSHS and the guardian ad litem were parties to the dependency proceeding and were allowed to adequately present their case.[5]

The purpose of a dependency hearing is to determine whether Christina is dependent, while looking to reconstruct the family unit. The juvenile court act, in cases relating to dependency of a child and termination of a parent and child relationship, has as its goal the purpose enunciated in RCW 13.34.020:

> The legislature declares that the family unit is a fundamental resource of American life which should be nurtured. Toward the continuance of this principle, the legislature declares that the family unit should remain intact in the absence of compelling evidence to the contrary.

The hearing is concerned not with whether Miss Langston, as a foster parent, can care for the child; rather it is concerned with whether the natural mother can properly care for the child. The testimony of Miss Langston, who seeks custody herself, would be adverse to the legislative purpose of dependency hearings.

In a similar situation, the Supreme Court of Kansas recently denied a maternal grandmother's right to intervene during a severance hearing on parental rights. The appellant grandmother contended that since she had the child for several months, she was custodian of the child acting in loco parentis and should have been granted intervention in the severance hearing. The court noted:

> Appellant's wish to intervene in the deprived child hearing is based on her interest in the ultimate custody of the child. While custody of the child will eventually require determination, that is not the direct issue in a deprived child hearing. [The appellant] is not the parent whose

---

[5]Miss Langston also relies upon *In re Clark*, 26 Wn. App. 832, 611 P.2d 1343 (1980), which is distinguishable as a deprivation proceeding. There, the State sought to permanently deprive an imprisoned father of his parental rights. Here, the focus was on dependency and Miss Langston was not a necessary party to that determination.

rights to her child are in question. She is not the object of the court's action and, therefore should not be permitted to intervene.

. . .

. . . [Appellant] did not have a substantial interest in the severance of [the mother's] parental rights. Although she cared for the child, she is more concerned with eventual custody. Intervention by [the appellant] as a party in the severance hearing would not have aided [the appellant] because she was not the object of the petition to sever. We hold the trial court did not err in denying [the appellant's] request to intervene.

*In re Walker,* ___ Kan. ___, 630 P.2d 1102, 1106–07 (1981).

We note Miss Langston is properly pursuing custody of Christina in a separate action under RCW 26.09.180. The trial judge did not abuse his discretion in denying the application to intervene in the case at bench.

The judgment of the Superior Court is affirmed.

MUNSON and ROE, JJ., concur.

Reconsideration denied January 13, 1982.

Review denied by Supreme Court March 26, 1982.