[Nos. 5203–6–III; 5690–2–III.   Division Three.   May 30, 1984.]

*In the Matter of the Welfare of*
Christina Robyn Coverdell.

Alice Coverdell, *Appellant,* v. The Department
of Social and Health Services,
et al, *Respondents.*

*William F. Etter, Witherspoon, Kelley, Davenport & Toole,* and *Aaron Horowitz,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Lee Ann Miller, Assistant,* for respondents.

THOMPSON, J.—This is a consolidated case involving the care and custody of Christina Robyn Coverdell. The procedural posture is complex.

Christina was born on September 27, 1978, to Roscoe and Alice Coverdell. Two days after birth, Christina was taken from her mother's custody and placed in shelter care by an ex parte order from Columbia County Superior Court. After a hearing on October 19, 1978, the child was ordered returned to her mother. Prior to the return, Mrs. Coverdell was beaten by Mr. Coverdell and was emotionally unable to care for the child, so she requested additional shelter care for her daughter. At that time Christina was placed with foster mother Laura Langston, with whom she continues to reside.

Alice and Roscoe Coverdell separated in July 1979 and their marriage was dissolved in January 1980. Roscoe Coverdell relinquished all rights to Christina. In 1980, Mrs.

Coverdell petitioned for custody and the Department of Social and Health Services (DSHS) petitioned for dependency. After a hearing in September in Columbia County, Christina was found dependent but again the court ordered her returned to Mrs. Coverdell. Prior to entry of findings, Ms. Langston moved for "joinder" (intervention) in the dependency proceedings, but her motion was denied. Ms. Langston appealed that ruling and started a separate custody action in Walla Walla County based on RCW 26.09-.180.

On June 19, 1981, prior to the decision in Ms. Langston's appeal, the State petitioned to terminate Mrs. Coverdell's parental rights. *See* RCW 13.34.180. Ms. Langston again moved to intervene and also moved to consolidate the Walla Walla custody action. She was allowed to intervene but not to consolidate. The court determined a termination proceeding was not appropriate because of the prior order to return Christina to her mother. The court ordered a dependency review proceeding instead. *See* RCW 13.34-.130(3).

Hearings were begun in November 1981, and continued intermittently until January 1982. During this time, Ms. Langston lost her appeal and was removed as a party. *See In re Coverdell*, 30 Wn. App. 677, 637 P.2d 991 (1981). The judge, having taken the case under advisement, had not yet rendered a decision when DSHS alleged Mrs. Coverdell had sexually abused Christina. As the result of this allegation, hearings were resumed on March 12. On March 24, 1982, the judge issued a letter opinion finding Christina continued to be dependent. On the day of presentment of the findings and conclusions, Mrs. Coverdell made several motions, all of which were denied. Mrs. Coverdell appealed the order in the dependency and the rulings on the motions. The State moved to dismiss the appeal, contending the order lacked finality because it was subject to modification. *See* RAP 2.2(a)(2) and RCW 13.34.150. This motion was denied.

Following the entry of the order in the dependency

review, Mrs. Coverdell made several additional motions, all of which were denied on February 2, 1983. Mrs. Coverdell filed a second appeal which was consolidated with the earlier matter.

Mrs. Coverdell first contends the court erred in allowing Ms. Langston to intervene in the dependency proceedings. We agree.

▪ CR 24(a) and (b) govern intervention of right and permissive intervention.[1] *See* JuCR 1.4(a). The trial court determined Ms. Langston had an interest in the proceedings and therefore had a right to intervene. This was error. As we said in *In re Coverdell, supra* at 680: "Miss Langston has shown neither a right to intervene under a statute nor that she possesses a legal interest not adequately represented by DSHS or the guardian ad litem." Without such a right or interest, the court erroneously allowed intervention of right.

Nor do we believe permissive intervention would be appropriate during the dependency proceedings in most cases.[2] We appreciate the difficult position of the foster family and recognize the foster parent is motivated by sincere concern and affection for the child. However, a foster parent's adversarial participation in a dependency hearing

---

[1] "(a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"(b) **Permissive Intervention.** Upon timely application, anyone may be permitted to intervene in an action:

"(1) When a statute confers a conditional right to intervene; or

"(2) When an applicant's claim or defense and the main action have a question of law or fact in common." CR 24(a), (b), in part.

[2] By this statement we do not mean to overrule our decision in *In re Maurer*, 12 Wn. App. 637, 530 P.2d 1338 (1975). If a child is found to be dependent or if parental rights are terminated, the foster parent or other custodian should be heard on the issue of custody. Furthermore, we do not imply a foster parent must be excluded from the dependency hearing. *See* RCW 13.34.110.

has a tendency to shift the focus of the proceeding from the ability of the natural parent to care for the child to a comparison of the natural parent to the foster parent. Inevitably, it becomes an unequal battle since in most instances the natural parent's shortcomings have brought the matter to court in the first place. The fact the child may have certain advantages in another's home cannot be determinative of the court's decision. *In re Tarango,* 23 Wn. App. 126, 130, 595 P.2d 552 (1979); *In re Schulz,* 17 Wn. App. 134, 139, 561 P.2d 1122 (1977). Thus, during dependency proceedings, the interests of the foster parents must give way to the paramount interests of the natural parents; permissive intervention will rarely be appropriate.

■ The trial court dismissed Ms. Langston as a party shortly after receiving our opinion. Mrs. Coverdell contends dismissal was an inadequate remedy since Ms. Langston's participation in the hearings as a party had already prejudiced her right to a fair hearing. First, we note Mrs. Coverdell did not request a new trial at the time of the dismissal. Having failed to raise this argument at trial, we will not consider it now. Second, Mrs. Coverdell has not shown she was unduly prejudiced by the wrongful intervention. Ms. Langston's theory of the case was similar to that of DSHS and the guardian ad litem. The judge was watchful of the repetition problem and twice admonished Ms. Langston's counsel to avoid it. The fact there is one more adverse party does not create undue prejudice if there is no need to put on a different defense. *See State ex rel. Keeler v. Port of Peninsula,* 89 Wn.2d 764, 575 P.2d 713 (1978). Therefore, although it was error to allow intervention, we do not believe that error affected the fairness of the proceeding so as to warrant a new hearing.

Mrs. Coverdell next contends the court erroneously admitted her records from Eastern Washington State Hospital in violation of RCW 71.05.390. The trial court limited admission to those records that described an act, condition, or event. Counsel stipulated the documents were authentic. *See* RCW 5.45.020.

█ The real question concerns admissibility. RCW 71.05.390 provides in part:

> The fact of admission, as well as all records, files, evidence, findings, or orders made, prepared, collected, or maintained pursuant to this chapter shall not be admissible as evidence in any legal proceeding outside this chapter without the written consent of the person who was the subject of the proceeding.[3]

There is no direct authority which allows this statute to be avoided in a dependency or termination proceeding. However, in proceedings involving the protection of children, the courts have been reluctant to keep relevant information from the trier of fact. *In re Dodge,* 29 Wn. App. 486, 628 P.2d 1343 (1981) found the physician/patient privilege, RCW 5.60.060(4), does not apply to termination proceedings. In *State v. Fagalde,* 85 Wn.2d 730, 539 P.2d 86 (1975), a child abuse case, the court addressed the confidentiality provision in RCW 69.54.070 and the psychologist/patient privilege, RCW 18.83.110. The court said at page 736:

> Thus, we cannot accept the appellant's theory that confidential communications between the perpetrator and a psychologist, or a doctor, or a mental health center employee, are protected from disclosure and privileged in a judicial proceeding, according to the terms of the applicable statutes. Such protection might well be deemed to be in the public interest. But it is evident that, in its recent enactments, the legislature has attached greater importance to the reporting of incidents of child abuse and the prosecution of perpetrators than to counseling and treatment of persons whose mental or emotional problems cause them to inflict such abuse.

*See also State v. Anderson,* 94 Wn.2d 176, 616 P.2d 612 (1980). *In re Henderson,* 29 Wn. App. 748, 630 P.2d 944 (1981) also addressed the psychologist/patient privilege. The court noted the application of that privilege required a balancing of the public's interest in full disclosure and the

---

[3]This statute was passed after Mrs. Coverdell's hospitalization. It is assumed it is applicable to all hospitalization pursuant to the mental health statutes, not just hospitalizations after the protective statute was passed.

patient's interest in nondisclosure. We accept this approach. To the extent the hospital records are relevant, they may be admitted in a dependency proceeding. Here, the trial court determined parts of the hospital records were relevant in response to Mrs. Coverdell's evidence regarding her mental health. She presented testimony from a psychologist and a psychiatrist to show she did not suffer from any mental disorder which would affect her ability to care for Christina. Hence, the court did not err in admitting portions of her hospital records allowing the State to attempt to show otherwise.

■ Mrs. Coverdell next contends there was insufficient evidence to support the court's finding of sexual abuse and manifest danger of abuse. *See* RCW 13.34.130(1)(b)(iv). The findings were based on a preponderance of evidence. *See* RCW 13.34.130. Our review is limited to whether there was substantial evidence to support them. *See In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973). Although there is evidence to the contrary, our review of the record discloses substantial evidence to support the trial court's findings.

■ Mrs. Coverdell also argues the court should have granted a continuance to allow her to present additional evidence. Her motion for a continuance was made after the trial court had issued a letter opinion, so the court treated it as a CR 59 motion for a new trial. Both a motion for a continuance and a motion for a new trial based on new evidence are left to the sound discretion of the trial court. *Swope v. Sundgren,* 73 Wn.2d 747, 440 P.2d 494 (1968); *State v. Pope,* 73 Wn.2d 919, 442 P.2d 994 (1968). A new trial is justified only if there is a showing the new evidence would most likely change the outcome. *Hill v. L.W. Weidert Farms, Inc.,* 75 Wn.2d 871, 454 P.2d 220 (1969). Here, the trial court's ruling was based on alternative findings of dependency. Hence, new evidence on the issue of sex abuse would not change the result.

■ After the dependency hearing, Mrs. Coverdell moved for a separate disposition hearing. This motion was denied. Nothing in RCW 13.34 entitles Mrs. Coverdell to a separate

disposition hearing after a dependency review proceeding. Furthermore, Mrs. Coverdell presents no justification for such a proceeding. The court heard considerable evidence relative to disposition and counsel was given ample notice to submit briefs. We find no basis for Mrs. Coverdell's claim that she has a right to a separate disposition hearing.

Mrs. Coverdell next contends she and her daughter were denied due process by the lengthy appellate process. However, Mrs. Coverdell failed to move for accelerated review. *See* RAP 18.8, 18.12. Furthermore, delay was due in part to the lack of a verbatim report and Mrs. Coverdell's request for an extension of time to file her opening brief. There is no basis upon which this court can afford relief.

The next three issues involve several posthearing motions, all of which were denied.[4] First, Mrs. Coverdell argues the court should have granted her request to inquire into possible emotional harm to Christina caused by the foster mother. We cannot say the trial court erred in refusing yet another hearing. Mrs. Coverdell's arguments and evidence had already been substantially presented at the dependency review hearing. Nor do we believe her offer of proof is sufficient to show the possibility of such emotional harm.

Mrs. Coverdell also argues the court erred in denying her motion for payment of court–ordered mental health counseling. She provided no evidence of potential cost or actual need. In addition, the mental health professional was hesitant to proceed without some clinical evidence the counseling would be beneficial.

Finally, Mrs. Coverdell contends the trial court should have placed Christina in a neutral foster home. We agree Mrs. Coverdell's struggle to regain custody of her child has been hampered by Ms. Langston's adversarial involvement. However, granting Mrs. Coverdell's request would result in

---

[4]The State argues these issues should be dismissed because they do not fall within the rationale or holding of an earlier commissioner's ruling on appealability. We see nothing in that ruling which forecloses our review.

removing Christina from the only home she has ever known. As stated by the trial court:

> I don't see how you can take a child out of that [foster] home without doing her a great deal of harm . . . particularly if the child were just to be placed in another foster home. For the life of me, I can't see how that would do anything but harm the child.

This was a discretionary matter and will not be disturbed absent a showing of abuse. We find the trial court did not abuse its discretion in denying neutral foster home placement.

The trial court is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Review denied by Supreme Court September 7, 1984.