46 P.3d 273 (2002)
111 Wash.App. 796
In re DEPENDENCY OF [J.S.].
No. 48881-3-I.
Court of Appeals of Washington, Division 1.
May 13, 2002.
*275 Richard Okrent, Lynnwood, Jason Saunders, Washington Appellate Project, Seattle, for Appellant.
Michael Majors, Everett, for Respondent.
Kirsten Haugen, Attorney At Law, Everett, Guardian At Litem.
*274 BECKER, C.J.
A parent whose child is the subject of a dependency action may propose a properly qualified adoptive placement for the child. A statute requires the Department of Social and Health Services to follow that preference if the parent agrees to a termination of parental rights and a court finds the placement to be in the best interest of the child. In this case, where the child was already thriving with relatives who were willing to adopt him, the trial court did not abuse its discretion in concluding that it was not in the child's best interest to be placed with a new adoptive family chosen by the parents.
The child whose placement is at issue is J.S., who was born in November 1999. Substantial shortcomings in the care provided by the boy's parents, Jeffrey Sherman and Leanne Setzer, caused the Department of Social and Health Services to seek shelter care for him when he was six months old. The department was required to seek placement with a relative if possible. RCW 13.34.060. The department was able to place J.S. with Hank Sherman, Jeffrey's cousin, who lived not far away. The boy continued there under an agreed order of dependency with weekly visits by his parents. According to the department's periodic reports to the court, the home of Hank Sherman and his wife Theresa Sherman was a nurturing environment, and J.S. did well there. The plan for him, approved at a review hearing in February 2001, was for the department to continue to offer services to Jeffrey and Leanne that might yet make it possible for them to be reunited with him, but at the *276 same time prepare for adoption. Hank and Theresa Sherman were willing to be a permanent adoptive placement.
Meanwhile, Leanne Setzer was expecting another child. Through an advertisement for a private adoption, Leanne and Jeffrey met the Kraus family, and made arrangements for the Krauses to adopt the new baby. The Krauses were willing to adopt J.S. as well. At the request of Jeffrey and Leanne, the trial court ordered the department to investigate the Krauses as a potential adoptive placement for J.S.
In 1999, the Legislature enacted a new statute that requires a court to determine whether an adoptive placement proposed by the parents of a dependent child is in the child's best interest. If so, that preference must be enforced:
In those cases where an alleged father, birth parent, or parent has indicated his or her intention to make a voluntary adoption plan for the child and has agreed to the termination of his or her parental rights, the department shall follow the wishes of the alleged father, birth parent, or parent regarding the proposed adoptive placement of the child, if the court determines that the adoption is in the best interest of the child, and the prospective adoptive parents chosen by the alleged father, birth parent, or parent are properly qualified to adopt in compliance with the standards in this chapter and chapter 26.33 RCW. If the department has filed a termination petition, an alleged father's, birth parent's, or parent's preferences regarding the proposed adoptive placement of the child shall be given consideration.
RCW 13.34.125.
The court set a contested review hearing for June 25, 2001 to consider the issue of adoptive placement for J.S. under the statute. By this time, J.S. was 19 months old. The Krauses, who had adopted the baby boy born to Leanne in March, had filed a petition to adopt J.S. as well, and had obtained the parents' formal consent to adoption. The Krauses moved to intervene in the dependency case involving J.S. They requested an order granting concurrent jurisdiction over the dependency and their adoption petition.
Jeffrey and Leanne preferred the Krauses as an adoptive placement because it would allow J.S. and his new brother to grow up together. Also, tension had arisen between Jeffrey and his cousin Hank Sherman as a result of Hank's disapproval of Jeffrey's lifestyle. Jeffrey alleged that J.S. was not receiving proper care from Hank and Theresa Sherman. The department disagreed with that allegation, and advocated for J.S. to remain in his current placement with adoption by the Shermans as the permanent plan. The volunteer guardian ad litem appointed by the court and a department social worker had each paid a visit to the Kraus family. While their reports had nothing negative to say about the Krauses, both the guardian ad litem and the social worker recommended that J.S. remain with Hank and Theresa Sherman because he had lived with them for most of his life, and had bonded with them.
At the hearing, Jeffrey and Leanne, the Krauses, and the guardian ad litem were present and all parties were represented by counsel. The court, after entering extensive findings of fact, concluded that it was in the child's best interest to remain placed with Hank and Theresa Sherman.
Balancing the sibling bond between [J.S.] and his brother with the quality of his current home and the potential short and long term detrimental effects on him of placement disruption, this Court considers the strength of the attachment between the brothers, the suitability of the Shermans as a permanent placement resource and the consequences of removal.
Because J.S. and his brother had never met, the court concluded the advantages of their potential relationship did not outweigh the advantages of allowing J.S. to remain in a good home where he was doing well. "A disruption at this child's young age could affect his ability to form attachments later in life. Additionally, the special needs that [J.S.] has shown are better dealt with among a family that is both familiar with the child and ready, willing and able to address these likely challenges." The court rejected as unfounded the parents' concerns that Hank Sherman's home was unsafe for J.S. The *277 court entered an order denying the Krauses' requests for intervention and concurrent jurisdiction, and denying the parents' request for a change of placement.
Jeffrey and Leanne appealed from the order. While their appeal was pending, the department filed a petition to terminate their parental rights. Trial of that matter was scheduled for April 10, 2002, but was stayed by this court pending resolution of this appeal, in which we heard oral argument on April 19, 2002.
In this appeal, the parents contend that the trial court erred by denying their parental preference; by failing to find that placement of J.S. with the Kraus family was in the child's best interests; and also by refusing to let the Krauses intervene.
The goal of the statutory procedures in RCW 13.34 is to resolve dependencies and termination proceedings speedily in order to allow the child to have a safe, stable, and permanent home. See RCW 13.34.020. The parties agree that the new statute, RCW 13.34.125, helps to promote early resolution of a dependency case that appears headed toward a petition to terminate parental rights. The first part of the statute is mandatory: when the parents agree to termination before the department files a termination petition, the department "shall" follow their adoptive placement preference if the statutory contingencies are met. The second part is advisory: once the department has filed a termination petition, the parents' wishes are entitled only to "consideration" by the department. RCW 13.34.125. The effect is that the earlier the parents choose voluntary termination, the more likely their preference for an adoptive placement will be honored.
In this case it was undisputed that the prospective parents chosen by Jeffrey and Leanne were properly qualified.[1] Jeffrey argues that the statutory scheme required the court to follow the parents' preference for the Krauses because the department did not show good cause for not doing so. This is an issue of statutory interpretation, which we review de novo. State v. Bright, 129 Wash.2d 257, 265, 916 P.2d 922 (1996). Jeffrey's argument for a "good cause" requirement is derived from a related statute, RCW 13.34.260.
In an attempt to minimize the inherent intrusion in the lives of families involved in the foster care system and to maintain parental authority where appropriate, the department, absent good cause, shall follow the wishes of the natural parent regarding the placement of the child. Preferences such as family constellation, ethnicity, and religion shall be considered when matching children to foster homes. Parental authority is appropriate in areas that are not connected with the abuse or neglect that resulted in the dependency and shall be integrated through the foster care team. For the purposes of this section, "foster care team" means the foster parent currently providing care, the currently assigned social worker, and the parent or parents.
RCW 13.34.260 (emphasis added).
The bill that became RCW 13.34.125, when first introduced, would have similarly required honoring a parental preference for adoptive placement "absent good cause." H.B. 1407, section 2, 56th Legislature Regular Session (Washington 1999).[2] A substitute version of the bill deleted the reference to a good cause requirement and inserted in its place the requirement that the court find the proposed placement to be in the child's best interest. The substitute bill became law. This legislative history shows that the "best interest" standard of RCW 13.34.125 was *278 intended to stand on its own in a case involving an adoptive placement, and not to be supplemented by the "good cause" requirement of RCW 13.34.260 which is applicable only to foster care placement. Cf. State v. Schwab, 103 Wash.2d 542, 551-53, 693 P.2d 108 (1985). The ultimate determination of placement is by the court, not by the department or by the parents. The trial court in this case properly refused to require the department to show good cause for rejecting the Krauses as an adoptive placement, and focused instead on the "best interest of the child" as the guide to its decision.
The parents argue that the best interest of J.S. would have been served by placing him for adoption with the Kraus family, and that the trial court erred in failing to so find. Because this was essentially a placement decision, it will be reviewed for abuse of discretion. "A placement decision in a dependency proceeding is discretionary and will be overturned on appeal only upon a showing of an abuse of discretion." In re Dependency of A.C., 74 Wash.App. 271, 275, 873 P.2d 535 (1994). Written findings of fact and conclusions of law are always advisable, and especially so in a contested case because they facilitate expedited review. In this case the trial court's detailed and thoughtful findings and conclusions are exemplary.
Parents have a fundamental liberty and privacy interest in the care and custody of their children. In re J.B.S., 123 Wash.2d 1, 12, 863 P.2d 1344 (1993). But a trial court should not allow the rights of the biological parents to override a child's best interests when determining placement under the dependency statute. In re J.B.S., 123 Wash.2d at 8, 863 P.2d 1344. The criteria for establishing the best interests of the child are not capable of exact specification because each case is largely dependent upon its own facts and circumstances. In re Aschauer, 93 Wash.2d 689, 695, 611 P.2d 1245 (1980). Courts have broad discretion and are allowed considerable flexibility to receive and evaluate all relevant evidence in order to reach a decision recognizing both the welfare of the child and the parental rights. In re Becker, 87 Wash.2d 470, 478, 553 P.2d 1339 (1976).
Evidence relevant to an adoptive placement decision may include, but is not limited to, the psychological and emotional bonds between the dependent child and its biological parents, its siblings, and its foster family; the potential harm the child may suffer if severed from contact with these persons as a result of a placement decision; the nature of the child's attachment to the person or persons constituting the proposed placement; and the effect of an abrupt and substantial change in the child's environment. In re J.B.S., 123 Wash.2d at 11, 863 P.2d 1344. An important objective is to maintain continuity in the child's relationship with a parental figure, and to avoid numerous changes in custody "if this is possible without harm to the child." In re Aschauer, 93 Wash.2d at 695, 611 P.2d 1245. See also RCW 74.13.290, .310; In re J.H., 117 Wash.2d 460, 470, 815 P.2d 1380 (1991); In re J.B.S., 123 Wash.2d at 12-13, 863 P.2d 1344. Where possible, the initial placement "shall be viewed as the only placement for the child." RCW 74.13.290.
The parents contend that placing J.S. with his brother would have furthered the policies underlying the dependency and termination statute by keeping the family unit intact. See RCW 13.34.020. They point out that unless the boys are placed in the same home, there is no guarantee that they will have an opportunity to form and maintain their sibling bond. The existence of a sibling relationship is indeed an important fact, and the findings and conclusions entered below demonstrate that the court gave ample consideration to it. The court found, however, that the desirability of fostering a relationship between J.S. and his brother was outweighed by the bonding that had already occurred between J.S. and the Sherman family.
The family unit that RCW 13.34.020 seeks to nurture is the family in which the child has lived "virtually his entire life, and to whom he has `psychologically bonded.'" In re Dependency of Ramquist, 52 Wash.App. 854, 862, 765 P.2d 30 (1988). Leanne contends that the department failed to submit competent evidence of a psychological bond between J.S. and the Shermans that would have prevented him from making a successful *279 transition into the Kraus home. She and Jeffrey also argue that the department's investigation into the suitability of the Krauses was cursory, and that the social worker appeared predisposed to keeping J.S. with the Shermans. In so arguing, the parents appear to assume that the statute imposes certain burdens upon the departmentif not the burden of proof, then at least a burden of investigation or production. But no party has briefed the issues of burdens and quantums of proof, and in the absence of briefing we will not attempt to provide definition.
The court was aware that the Krauses were a viable adoptive placement for J.S. The court nevertheless reasoned that the best interest of the child was to remain in his current placement where he was thriving, not to undergo the risk of a transition. The record shows that Hank and Theresa Sherman were also prepared to adopt J.S. The Shermans are experienced parents of three children. J.S. was observed to be happy and healthy in their care, and was accepted by all members of their family. At the time of the court's decision he had lived with them for 14 of his 19 months. The court did not abuse its discretion by concluding that the Shermans were the family to whom J.S. had bonded, and that he should remain in their care.
Jeffrey argues that following the parents' preference would have better served the statutory intent of achieving a speedy resolution of the dependency. The parents were ready to relinquish their parental rights voluntarily to the Krauses, but as a result of the court's decision rejecting their proposal, they did not voluntarily agree to termination, and J.S. at this juncture remains dependent.
Voluntary relinquishment of parental rights unquestionably will end a dependency faster than contested termination proceedings. But if the Legislature had intended automatic approval for voluntary adoption plans offered by parents, it would not have given the court the role of determining the best interest of the child. If that determination is controversial, there may be an appeal and concomitant delay. Because this possibility is inherent in the statutory scheme, we reject the argument that legislative intent is served only by following the parental preference.
The fact that Jeffrey and Leanne are still in a position to resist termination of their parental rights, despite having invoked RCW 13.34.125, draws attention to an ambiguity in the statute. The trial court questioned whether RCW 13.34.125 was even applicable in view of the fact that Jeffrey and Leanne had not voluntarily terminated their parental rights before seeking to enforce their preference at the contested hearing. The statute says the department shall follow the wishes of the parents regarding placement in "those cases where an alleged father, birth parent, or parent has indicated his or her intention to make a voluntary adoption plan for the child and has agreed to the termination of his or her parental rights". RCW 13.34.125. This language could be interpreted to mean that before the court will consider the parents' preference for an adoptive placement, the parents must have already terminated their parental rights. Or it could be interpreted to mean that the parents need only have agreed to terminate those rights at some later date.
An agreement to terminate in the future could be problematic if it caused undue delay in the resolution of a dependencyif, for example, parents whose placement preference was denied by the court then made second or third nominations for adoptive placement. On the other hand, if parental rights must be terminated before the parents can be heard, then the parents would arguably have no right to counsel and no standing to advocate for their preference. This would seem inconsistent with the legislative scheme and purpose, and could have a tendency to nullify the very incentive the Legislature intended to create.
Here, despite the fact that Leanne and Jeffrey had not actually terminated their parental rights, no one objected to the court going forward with the contested hearing under RCW 13.34.125 to determine the best interest of J.S. As parents of the dependent child, Leanne and Jeffrey could be present and represented by counsel throughout the proceedings, and there was no question about their standing to advocate for their adoptive *280 placement preference. Because there was no objection, and considering that the parties have not briefed the issue, we will not in this case attempt to resolve the ambiguity in the statute.
The final issue, argued by Leanne, is whether the trial court erred by denying the Krauses' motion to intervene. The Krauses did not demonstrate to the trial court a right to intervene under a statute. While they had an interest in adopting J.S. and bringing him into the same home with his brother, they did not show that such interest was inadequately represented by the biological parents. Without such a right or interest, the court properly denied the Krauses' motion for intervention as a matter of right under CR 24(a).
One of the grounds for permissive intervention under CR 24(b) is when "an applicant's claim or defense and the main action have a question of law or fact in common." A trial court's decision on permissive intervention in a dependency is within the court's informed discretion and will not be disturbed absent an abuse of that discretion. In re J.H., 117 Wash.2d at 472, 815 P.2d 1380. The Krauses argued that their petition to adopt J.S. shared with the dependency case the common question of who had the right to decide the boy's future at that point in the dependency.
As a general rule, intervention in dependency cases prior to termination of parental rights is rarely appropriate. The focus ordinarily should be on the ability of the natural parents to care for the child, not on a comparison between the natural parents and the foster parents. In re Coverdell, 39 Wash.App. 887, 890-91, 696 P.2d 1241 (1984). We agree with Leanne that the Coverdell rationale has little force in a case where the interest of the natural parents is in accord with the interest of the proposed intervenor. But by the same token the accordance of their interests undercuts the argument for intervention. In denying permissive intervention, the trial court emphasized the Krauses' lack of direct past or present involvement with J.S. This was a tenable basis for the court's exercise of its discretion, and we conclude the court did not err.
The order denying the request to change placement to the Kraus family is affirmed, along with the order denying the Krauses' motion to intervene. The stay of the petition to terminate the parental rights of Jeffrey Sherman and Leanne Setzer is lifted.
ELLINGTON and COX, JJ., concur.
NOTES
[1] Although it is not included in the record, a home study of the Kraus family was apparently among the materials they submitted to the trial court.
[2] The original text proposed for House Bill 1407 read as follows:

"In those cases where the natural parents have indicated their intention to make a voluntary adoption plan for the child and have agreed to the termination of their parental rights, the department, absent good cause, shall follow the wishes of the natural parent or parents regarding the proposed adoptive placement of the child, if prospective adoptive parents chosen by the natural parents are properly qualified to adopt in compliance with the standards in this chapter and chapter 26.33 RCW."