57 P.3d 266 (2002)
147 Wash.2d 687
In the Matter of the DEPENDENCY OF J.W.H. (D.O.B. 1/3/89), J.C.H. (D.O.B. 5/7/91), S.E.H. (D.O.B. 1/26/93), Minor Children.
Keith and Lisa Blume, Petitioners,
v.
State of Washington Department of Social and Health Services, Respondent.
Nos. 71300-6, 71298-1.
Supreme Court of Washington, En Banc.
Argued July 2, 2002.
Decided November 7, 2002.
*267 Cynthia Whitaker, Edwards, Sieh, Smith & Goodfriend, Catherine Smith, Seattle, for Petitioner.
Christine Gregoire, Attorney General, Thomas Masco, Asst., Michael Collins, Asst., Noella Rawlings, Asst., Public Defenders Office, Linda Lillevik, Tracy Lapps, Christine Jackson, Seattle, Nicole Blake, Auburn, for Respondent.
Heidi Nagel, David Israel, Kenneth Morrissette, Jr., Seattle, Guardian ad Litem.
Ursula Barboza, Tacoma, Philip Talmadge, Tukwila, Michele Jones, Seattle, Amicus Curiae.
ALEXANDER, C.J.
The King County Superior Court entered an order holding that J.W.H., J.C.H., and S.E.H. are dependent children. The order was based on a finding that the aforementioned children had no parent, guardian, or custodian capable of adequately caring for them. The Court of Appeals, Division One, affirmed the dependency order. We conclude that the Court of Appeals erred in affirming the superior court's dependency order because the trial court's order was unsupported by any finding that the children's aunt and uncle, who had previously been awarded temporary custody of the children in a nonparental child custody action, were incapable of adequately caring for the children. We, therefore, reverse the Court of Appeals' affirmance of the dependency order and all orders based on the dependency determination, except for the trial court's order providing for concurrent jurisdiction of the dependency proceeding and the nonparental child custody action.

I.
Beth and Matthew Huddle met in the 1980s when they were each undergoing treatment for drug addiction. They thereafter married and had three children: J.W.H. (DOB 1/3/89); J.C.H. (DOB 5/7/91); and S.E.H. (DOB 1/26/93). Following the death in 1997 of Beth Huddle's mother and Beth Huddle's subsequent inheritance of a substantial sum of money from her mother, Beth and Matthew Huddle again fell into drug use. Unfortunately, their use of cocaine increased to the point that it "impacted [their] care of the children." Clerk's Papers (CP) at 234, 242. In January 1999, as a result of family "[i]ntervention arranged" in part by Lisa and Keith Blume, Matthew Huddle's sister and brother-in-law, the Huddles "voluntarily placed" their children with the Blumes. Id. Beth and Matthew Huddle then each entered an in-patient drug treatment program.
Following the Huddles' re-entry into drug treatment, "family members" entered their home and found that it was "extremely dirty" with garbage "strewn about." Id. They also observed "[u]nsafe items ... within reach of the children." Id. In addition, "[a] variety of sexual paraphernalia was found in the parents' bedroom and in the office." CP at 234, 243. During the initial stages of the Huddles' drug treatment, the Blumes' cared for J.W.H., J.C.H., and S.E.H. at the Huddles' home. Shortly thereafter, the children moved with the Blumes to the Blumes' home.
Beginning in the spring of 1999 and continuing through the summer of that year, the Huddle children revealed "that they were touched in a sexual manner by their parents and their parents' friends." CP at 235, 243. In addition, the children alleged that their parents "inserted lighted candles, matches and broken bulbs" into the anus of each of them. CP at 235. They also reported sexual acts "between one another and instances where they victimized other children." CP at 235, 243. Although Beth and Matthew Huddle disputed the children's claims that they had touched them in a sexual way, Beth Huddle conceded that she and Matthew Huddle "were extremely involved in sexual activity with each other and on two occasions with other adults during the time they were using cocaine" and that the children "may have" witnessed this activity.[1] CP at 234-35.
*268 In April 1999, following Beth and Matthew Huddle's return from in-patient drug treatment, the Blumes commenced, pursuant to RCW 26.10.030, a nonparental custody action in King County Superior Court (King County Super. Ct. No. 99-3-03184 2SEA).[2] In their petition, they sought permanent custody of the Huddle children, alleging that the children were "not in the physical custody of one of the parents," and that "neither parent" was a "suitable custodian for the children." CP at 128F.
On June 24, 1999, the superior court entered an order giving the Blumes temporary custody of all three Huddle children. The order, the entry of which was agreed to by the Huddles, provided that the children were to reside with the Blumes and it gave the Blumes the right to provide "day-to-day care and control of each child" as well as the authority to "make emergency decisions affecting the health or safety of the children" and "[n]on-emergency health care" decisions. CP at 128P, Q. Although the order gave Beth and Matthew Huddle limited visitation rights with their children, they were required to exercise their visitation rights under supervision. The Blumes later made arrangements with the State of Washington to have J.C.H. placed in a therapeutic foster home because of his continued sexual acting out with his siblings. J.W.H. was later placed in a foster home for essentially the same reasons. S.E.H. remained with the Blumes from the time the temporary custody order was entered until oral argument was heard in this court.
On November 3, 1999, on motion of the Blumes, the superior court entered an order restraining Matthew and Beth Huddle from having any contact with their children and suspending their visitation rights "until further order of the court." CP at 128V. Following entry of that order, the State of Washington commenced a dependency action in King County Juvenile Court (King County Super. Ct., Juv. Div., No. 99-7-03830-2SEA). In its petition, the State alleged, pursuant to RCW 13.34.030(5)(b) and (c), that the children had been "abused or neglected ... by a person legally responsible" for their care and that the children had no "parent, guardian or custodian capable of adequately caring for the child[ren]." CP at 2. The allegations in the State's petition all pertained to conduct on the part of Matthew and Beth Huddle. No allegations were made against either of the Blumes. The Blumes sought to intervene in the dependency action. Although the State resisted this effort, the juvenile court granted the intervention permissively and as a matter of right.
In January 2000, the State and the Huddles sought entry of agreed orders of dependency solely on the basis that the Huddle children had "no parent, guardian, or custodian capable of adequately caring" for them. RCW 13.34.030(5)(c). A superior court commissioner denied their request, concluding that because the Blumes were temporary custodians of the children pursuant to an order entered in the third party custody proceeding "and remained such as of the dependency petitions filed in Nov[ember] 1999," the children were not dependent under the statute. CP at 19. The commissioner reaffirmed his prior rulings that the Blumes were necessary parties to the dependency action and entitled to intervene. A superior court judge thereafter denied a motion for revision that had been brought by the State and the Huddles.
The matter was then assigned to another superior court judge who entered a series of orders limiting the Blumes' ability to obtain certain discovery. Thereafter, based upon agreement between the State and Matthew and Beth Huddle, the trial court found the Huddle children dependent, solely on the basis that they had "no parent, guardian, or custodian capable of adequately caring for [them]." RCW 13.34.030(5)(c); see CP at 233-48. In support of its dependency order, the trial court made numerous findings of fact, all of which pertained to parenting deficiencies *269 on the part of Beth and Matthew Huddle. The Blumes objected to entry of the dependency order, but the trial court concluded that they had no "standing to challenge this order." CP at 238; see CP at 246. Dispositional orders were entered on August 23, 2000. The trial court then entered an order on the motion of Matthew Huddle for "limited concurrent jurisdiction" of the nonparental child custody action and dependency action. CP at 124.[3] It also entered an order vacating the order that had been entered in the nonparental custody action giving the Blumes temporary custody of the Huddle children.
The Blumes appealed the order of dependency to Division One of the Court of Appeals, contending that the trial court erred in holding that the Huddle children were dependent under RCW 13.34.030(5)(c). They pointed out that at the time the trial court entered the dependency order they were the duly appointed custodians of the children and that no finding had been made that they were incapable of adequately caring for the children in their capacity as custodians. Although that court rejected the State's argument that the Blumes did not have standing to appeal, it affirmed the trial court's dependency order on the basis that as temporary custodians the Blumes were not legal custodians in the context of dependency actions. It said:
We hold that `legal right to custody' as contemplated in the dependency statutes means final legal custody. Because the Blumes did not have a final order of custody of the Huddle children, they did not have `legal right to custody' as contemplated by RCW 13.04.011(6). They are therefore not custodians under RCW 13.34.030(5)(c), and the children are dependent.
In re Dependency of J.W.H., 106 Wash.App. 714, 723, 24 P.3d 1105 (2001). The Court of Appeals also held that the Blumes should not have been permitted to intervene in the dependency proceeding as "a matter of right" and were permissive intervenors only. Id. at 725, 24 P.3d 1105. As such, the Court of Appeals concluded they were akin to foster parents and could not object to the agreed orders of dependency. The Blumes sought discretionary review here of the Court of Appeals' decision and we granted their motion.[4]

II. Analysis

A. The Dependency Order
The Blumes assert here, as they did at the Court of Appeals, that because they were the temporary custodians of the Huddle children at the time the order of dependency was entered and there was no finding that as custodians they were incapable of caring for the children, the trial court erred in declaring the children to be dependent. As noted above, the Court of Appeals disagreed with the Blumes. It determined that the term "custodian" was "ambiguous" and that when viewed in light of the entire dependency statute means a permanent custodian and not a temporary custodian. J.W.H., 106 Wash. App. at 722, 24 P.3d 1105. In reaching its decision, the court looked at the provisions of RCW 13.34.020, which provides that "the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized" and concluded that:
[t]his focus on permanency and stability necessarily precludes any definition of a family unit that is transitory or temporary in nature. Thus, if a child finds herself in a temporary situation, even one that is *270 loving and nurturing, the objectives of the Legislature cannot be achieved if the State may not intervene on behalf of the child. To allow custodians awarded the temporary care of allegedly dependent children to preempt a determination of dependency would render the dependency statutes meaningless, because it would prevent the State from restoring the children to a permanent family unit.
Id. at 723, 24 P.3d 1105. The State and the Huddles assert that the Court of Appeals was correct in reaching that conclusion.
We hold that the Court of Appeals erred in reaching the decision that it did. The State maintained the dependency action pursuant to chapter 13.34 RCW, the Juvenile Court Act. In that act, a "custodian" is defined as "that person who has the legal right to custody of the child." RCW 13.04.011(6). We see nothing ambiguous about the term "custodian," and thus no need to construe the statute. Davis v. Dep't of Licensing, 137 Wash.2d 957, 964, 977 P.2d 554 (1999) (Unambiguous statutory language is accorded its plain meaning on the theory that the legislature is presumed to mean "`exactly what it says.'" (quoting State v. McCraw, 127 Wash.2d 281, 288, 898 P.2d 838 (1995))). In the plain language of the aforementioned statute, the Blumes were persons who had "the legal right to custody" of the Huddle children by virtue of an order of a court of competent jurisdiction. Pursuant to that order they made arrangements with the State to have J.W.H. and J.C.H. placed in foster care, and they have kept S.E.H. at their home for many months. Indeed, at the time the dependency order was entered they had been custodians of the Huddle children for nine months. The fact that they were temporary custodians and not permanent custodians does not, in our view, subtract from their status as custodians, the only significant distinction between a temporary order and a permanent order being duration.
The Court of Appeals' construction of the statute overlooks the fact that the aim of a third party custody action is essentially the same as that of a dependency action. In that regard, the Blumes reasonably claim that, as temporary custodians with a pending petition for permanent custody, they were pursuing a statutory action to establish a permanent home for these children who allegedly suffered abuse and neglect at the hands of their parents. It seems inconsistent for the Court of Appeals to have based its interpretation of "custodian" on a notion of permanency, when that court acknowledged that custody actions and dependency proceedings share the same "overarching purpose" of "provid[ing] for the best interests of the children at issue." J.W.H., 106 Wash.App. at 724, 24 P.3d 1105. In our judgment, the Huddle children's right to a permanent home may well have been placed in greater jeopardy by entry of an order of dependency under RCW 13.34.030(5)(c) (lack of parent or custodian), which precluded the kind of fact finding that would have been necessary under RCW 13.34.030(5)(b) (abuse or neglect).
The Court of Appeals found support for its conclusion that the Blumes were not custodians of the Huddle children in RCW 13.34.145(8), the permanency planning section of the dependency statute. That statute, it noted, requires dismissal of a dependency action once a guardianship or permanent custody order is entered, but does not require dismissal where a temporary custody order has been entered in a nonparental custody action. We believe that the existence of RCW 13.34.145(8) actually supports the Blumes' position. It contemplates that a nonparental custody action maintained pursuant to chapter 26.10 RCW may be heard in conjunction with a dependency action and makes the dependency action contingent on the outcome of the custody proceeding, not the other way around.[5]
We find additional support for our decision in State v. Carver, 113 Wash.2d 591, 781 P.2d 1308, 789 P.2d 306 (1989). In that case we affirmed a defendant's conviction for custodial interference. An element of the crime, as charged, was that the defendant, Peter Carver, *271 had taken his child from the child's mother, who had "a lawful right to physical custody" of the child. Carver's main contention was that there was insufficient evidence that the child's mother had a "`lawful right to physical custody'" of the child because she merely had "temporary custody" by virtue of an order of the Snohomish County Superior Court. Id. at 605, 781 P.2d 1308. In affirming the defendant's conviction, this court held that the temporary custody order gave the mother "lawful custody." Id. at 611, 781 P.2d 1308; see also In re Marriage of Kastanas, 78 Wash.App. 193, 200, 896 P.2d 726 (1995) (a temporary restraining order is a custody determination).
In sum, we conclude that the trial court erred in entering the dependency order, absent a finding that the custodians of the children, the Blumes, were incapable of adequately caring for the children. Thus, the Court of Appeals' affirmance of that order must be reversed. While it is true that the order that was entered in the nonparental child custody action giving the Blumes temporary custody of the Huddle children was vacated by the dependency court, this occurred after the dependency order had been entered. It appears to us that the order vacating the temporary custody order was based on the trial court's determination that the dependency proceeding was entitled to primacy and that a dependency order was extant. Indeed, the Court of Appeals cited RCW 13.04.030 for the proposition that the juvenile court has exclusive jurisdiction in cases relating to children alleged or found to be dependent. Although we acknowledge the existence of that statute, we again observe that RCW 13.34.145(8) provides that the juvenile court may dismiss a dependency petition in cases where "legal custody" proceedings have been held in another proceeding and shall dismiss a dependency order if a permanent custody order has been entered. In light of these statutes, it makes good sense for us to remand to the trial court for it to consider evidence in the joined nonparental child custody and dependency proceedings. As noted above, both proceedings have the best interests of the children as their purpose.

B. The Status of the Blumes as Intervenors in the Dependency Action
Although we are remanding to the trial court to consider evidence in the joined proceedings, we need to clarify the Blumes' status at the dependency proceeding. It is necessary for us to do that because the Court of Appeals determined that the Blumes had only limited status as permissive intervenors and that, therefore, they could not object to entry of the dependency orders. In reaching its decision, the Court of Appeals relied on In re Welfare of Coverdell, 39 Wash.App. 887, 696 P.2d 1241 (1984), a case in which the court concluded that a "foster parent's adversarial participation in a dependency hearing has a tendency to shift the focus of the proceeding from the ability of the natural parent to care for the child to a comparison of the natural parent to the foster parent." Id. at 890-91, 696 P.2d 1241. The Coverdell court went on to say that this was an unfair comparison "since in most instances the natural parent's shortcomings have brought the matter to court in the first place." Id. at 891, 696 P.2d 1241.
We are of the opinion that there is a valid distinction between foster parent intervenors and intervenors like the Blumes who are maintaining a third party custody action and have been granted temporary custody of the children who are the subject of the dependency action. Although, as the court in Coverdell noted, the interest of a foster parent is adequately represented by the State, the same cannot be said of persons in the Blumes' position.
In reaching that conclusion, we note that the Court of Appeals concluded here that the goals the Blumes sought to secure, the best interest of the children, were adequately protected in the dependency proceeding by the State and the children's guardian ad litem. We do not share that view because, as we have noted, the Blumes had been temporary custodians of the Huddle children for a substantial period of time. The record shows that during this time they struggled to provide these children with a safe, stable, and permanent home. It is not reasonable *272 to say that the State was adequately representing the Blumes' interests when it agreed with the Huddles, over the Blumes' objection, to entry of an order of dependency without a fact finding hearing regarding the children's allegations against their parents. In our judgment, the juvenile court properly granted the Blumes the "right" to intervene, pursuant to CR 24(a)(2).[6] The Court of Appeals, therefore, erred in concluding otherwise.
We also hold that the Blumes had a right as caregivers with party status to present evidence in the dependency proceeding before the State proceeded toward reunification of the children with their parents. In that regard, we find ourselves in agreement with In re Welfare of Hansen, 24 Wash.App. 27, 599 P.2d 1304 (1979), a decision by Division Three of the Court of Appeals. There the evidence showed that a child's legal guardians had provided the sole care of the child for eight years. The guardians were friends of the child's mother who had agreed to care for the child because of the mother's marital problems and drug dependency. Despite the fact that the child's mother had little contact with the child for eight years, she successfully petitioned a California court for termination of the guardianship. When the guardians later filed a dependency petition in this state, the trial court limited the testimony to that of the child's mother and maternal grandmother before finding the child dependent and expressing the view that the child should be reunited with her mother. After an appeal by the guardians to Division Three of the Court of Appeals, that court concluded that the trial court erred in refusing to hear evidence proffered by the guardians. The court said:
The Corderos are not Tammy's natural parents; nevertheless, they have stood in the relation of in loco parentis to the child for many years. The rights and liabilities arising out of the in loco parentis relationship are substantially similar to the relationship between parent and child. State ex rel. Gilroy v. Superior Court, 37 Wash.2d 926, 933, 226 P.2d 882 (1951). Therefore, due process principles require that on remand the Corderos be given a full and meaningful opportunity to present evidence in support of their dependency petition. In re [Welfare of] Luscier, 84 Wash.2d 135, 137, 524 P.2d 906 (1974); In re Hagen, 21 Wash.App. 169, 173, 584 P.2d 446 (1978).
Id. at 36, 599 P.2d 1304.
The Court of Appeals distinguished Hansen here on the basis that the guardians in Hansen had not appealed the finding of dependency, but only the trial court's refusal to hear their evidence, whereas "the Blumes do contest the finding of dependency in this case." J.W.H., 106 Wash.App. at 726, 24 P.3d 1105. The Court of Appeals also stated here that the Blumes "have not identified any evidence they claim the trial court did not consider." Id. This reasoning, in our view, ignores the central fact that the curtailment of fact finding on the abuse and neglect allegations is the gravamen of the Blumes' complaint. As the Blumes point out, entry of the agreed order of dependency "allowed the parents to avoid a judicial assessment of their deficiencies and proceed[ ] directly to reunification." Pet. for Review at 18.
In a further effort to distinguish Hansen, the State observed that the Blumes were not guardians and that the duration of their caretaking of the Huddle children was not comparable to the years of caretaking provided by the guardians in Hansen. These differences, in our judgment, do not support the withholding of due process rights from the Blumes, who, after all, were parties to the dependency action, temporary custodians, and petitioners for permanent custody of the Huddle children. To hold otherwise would be to adopt the State's reasoning that "[t]he practical impact of [the Court of Appeals'] ruling is that the [Blumes] must either be advocates for reunification with the parents or be silent." Resp. to Pet. for Review at 7. That is a notion we cannot accept.

III. Conclusion
For reasons stated above, we reverse the Court of Appeals' affirmance of the trial *273 court's order holding that the Huddle children were dependent on the basis that they had "no parent, guardian, or custodian capable of adequately caring for [them]." RCW 13.34.030(5)(c). We also reverse the Court of Appeals' affirmance of the order vacating the nonparental custody order. Finally, we remand to the King County Superior Court for further proceedings in the joined nonparental custody action and dependency proceeding. At this proceeding all parties, including the Blumes, shall be full participants and shall have the right to present evidence for determination of both the custody and dependency matters. To determine the best interests of the children in this joint matter it is anticipated that the court will consider parental fitness and/or whether physical or psychological damage has been inflicted upon these children.[7] No party is to be precluded from presenting evidence as to the allegations of abuse and neglect. It is only with all parties participating in the proceeding that the best interests of the Huddle children can be protected and justice done. Although both actions should proceed on the same track, it may, depending on the outcome of the custody proceeding, be necessary for the trial court to determine what orders it should enter in the dependency proceeding pursuant to RCW 13.34.145(8).
The Court of Appeals is reversed.
SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.
NOTES
[1] The children also disclosed that they were shot by their father with a BB gun and other instances where they were "shoved and hit." CP at 235.
[2] The statute provides in part that:

"(1) ... a child custody proceeding [may be] commenced in the superior court by a person other than a parent, by filing a petition seeking custody of the child in the county where the child is permanently resident or where the child is found, but only if the child is not in the physical custody of one of its parents or if the petitioner alleges that neither parent is a suitable custodian." RCW 26.10.030(1).
[3] The Blumes had earlier moved to consolidate the dependency and nonparental custody actions but the trial court had not ruled on the motion. See RCW 13.04.030(3), which provides that "[t]he juvenile court shall have concurrent original jurisdiction with the family court over child custody proceedings under chapter 26.10 RCW."
[4] The Blumes designated their pleading a petition for review, but we redesignated it a motion for discretionary review pursuant to RAP 18.13(e). This court also granted review of a permanency planning order entered by the trial court on March 22, 2001, and consolidated it with the review of the Court of Appeals' decision. This order mandated the children's return to their parents by June 2002. On June 10, 2002, this court vacated an order entered by the trial court on April 19, 2002. This court's order had the effect of returning the child, S.E.H., to the status quo prior to entry of the trial court's order of April 19, 2002.
[5] RCW 13.34.145(8) provides, in part, that "[a]t the conclusion of the legal guardianship or permanent legal custody proceeding, a juvenile court hearing shall be held for the purpose of determining whether dependency should be dismissed. If a ... permanent custody order has been entered, the dependency shall be dismissed."
[6] CR 24(a)(2) permits an applicant to intervene as a matter of right when "the applicant claims an interest relating to the ... transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
[7] See generally RCW 13.34.030(5)(b), (c); RCW 26.10.100; In re Interest of Mahaney, 146 Wash.2d 878, 894, 51 P.3d 776 (2002); In re Welfare of Aschauer, 93 Wash.2d 689, 611 P.2d 1245 (1980).