# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Adoption of ) No. 73438-5-I
C.T.K.M., )
D.O.B. 01/29/2009, ) DIVISION ONE
)
          A minor child. ) UNPUBLISHED OPINION
)
_____) FILED: February 16, 2016

TRICKEY, J. — The Fourteenth Amendment's guarantee of equal protection does not require the State to provide parents whose parental rights may be terminated through adoption proceedings with the same services the State provides to parents whose parental rights may be terminated through dependency proceedings. Similarly, the expanded protections afforded to incarcerated parents whose parental rights may be terminated through dependency proceedings do not apply to biological parents in adoption proceedings. Here, the trial court properly determined that Thomas McMahon was an unfit parent and that the termination of McMahon's parental rights would be in C.T.K.M.'s best interest. We affirm.

## FACTS

Thomas McMahon and Regina Jane Padgett are the biological parents of C.T.K.M., born January 29, 2009. C.T.K.M. has lived with Timothy and Tammy Dehnhoff since he was three days old. Tammy Dehnhoff has been C.T.K.M.'s legal custodian since October 15, 2009.

McMahon was incarcerated at the time of C.T.K.M.'s birth. He did not contact C.T.K.M. until January 2014, when he sent C.T.K.M a birthday card. At this time, C.T.K.M. was five years old.

On June 2, 2014, the Dehnhoffs petitioned the trial court for the termination

of both McMahon's and Padgett's parental rights pursuant to the adoption statute, RCW 26.33.120. McMahon's attempts to contact C.T.K.M. increased after he received the Dehnhoffs' petitions for adoption and termination of his parental rights.

The State terminated Padgett's parental rights on July 8, 2014, after she failed to appear for her termination proceedings.

McMahon came before the court in March 2015 for a trial on his parental rights. Based on the testimony at trial, the court concluded that McMahon was not a fit and proper parent and had failed to perform his parental duties under circumstances showing a substantial lack of regard for his parental obligations to C.T.K.M. The court further concluded that McMahon was refusing to consent to C.T.K.M.'s adoption contrary to C.T.K.M.'s best interests, and that termination of McMahon's parental rights for the purposes of adoption by the Dehnhoffs was in C.T.K.M.'s best interest. Accordingly, the trial court ordered the termination of McMahon's parent-child relationship with C.T.K.M.

McMahon appeals.

ANALYSIS

Equal Protection

McMahon challenges Washington's adoption statute, RCW 26.33.120, on equal protection grounds. Specifically, he contends that the United States Constitution's guarantee of equal protection, contained in the Fourteenth Amendment, requires that services available to parents in dependency proceedings under RCW 13.34.180(1)(d) also be available to parents in adoption

2

proceedings. Because McMahon has not shown that he is similarly situated to parents in dependency proceedings, we disagree.

Legislative enactments are presumed constitutional, and the burden of establishing that a statute is unconstitutional rests with the party challenging the statute. In re Interest of Infant Child Skinner, 97 Wn. App 108, 114, 982 P.2d 670 (1999). The party "must prove beyond a reasonable doubt that the statute is unconstitutional." In re Welfare of A.W., 182 Wn.2d 689, 701, 344 P.3d 1186 (2015).

The Fourteenth Amendment guarantees "that persons similarly situated with respect to the legitimate purpose of the law must receive like treatment." State v. Manussier, 129 Wn.2d 652, 672, 921 P.2d 473 (1996). In order to pursue an equal protection claim, "the complaining person [must] establish that he or she is similarly situated with other persons." State v. Handley, 115 Wn.2d 275, 289-90, 796 P.2d 1266 (1990).

"Whether a [party] is similarly situated is an inquiry that is determined by and relative to the purpose of the challenged law." State v. Pedro, 148 Wn. App. 932, 946, 201 P.3d 398 (2009); see, e.g., State v. Hamedian, 188 Wn. App. 560, 569-70, 354 P.3d 937 (2015) (relying on the different purposes of the Sentencing Reform Act and the Juvenile Justice Act to hold that a juvenile offender could not show that he was similarly situated to an adult offender); State v. Manro, 125 Wn. App. 165, 175, 104 P.3d 708 (2005) (holding that juveniles were not similarly situated when one was in juvenile court and one was in adult court, despite similarity in the nature of the charges against them).

In Skinner, this court determined that failing to provide parents in adoption proceedings with the services provided to parents in dependency proceedings did not offend equal protection. 97 Wn. App 108, 118, 982 P.2d 670 (1999). This court relied on the differing nature of the State's involvement in child welfare and adoption proceedings to conclude that the parties were not similarly situated. Skinner, 97 Wn. App. at 117-18. It held that equal protection "'does not require that individuals in circumstances that are different in relevant ways be treated as if their situations were the same.'" Skinner, 97 Wn. App. at 118 (internal quotation marks omitted) (quoting In re Detention of Dydasco, 135 Wn.2d 943, 951, 959 P.2d 1111 (1998)).

We adhere to our decision in Skinner. Our legislature stated that "the purpose of *adoption* is to provide stable homes for children" and that the "guiding principle must be determining what is in the best interest of the child." RCW 26.33.010 (emphasis added). However, as this court has held, "The primary purpose of a *dependency* is to allow courts to order remedial measures to preserve and mend family ties, and to alleviate the problems that prompted the State's initial intervention." In re Dependency of T.L.G., 126 Wn. App. 181, 203, 108 P.3d 156 (2005) (emphasis added). This builds on the legislature's declarations, set out in the dependency statute, that "the family unit is a fundamental resource of American life which should be nurtured" and "the family unit should remain intact unless a child's right to conditions of basic nurture, health, or safety is jeopardized." RCW 13.34.020.

In short, parents involved in the dependency and adoption proceedings are

not similarly situated to each other. Although both the dependency and adoption statutes value a child's health and safety, they are clearly guided by different goals: preserving the family unit versus ensuring a stable home. A parent's interest in maintaining the right to parent his or her biological child is much more closely aligned to the purpose of the dependency statute than it is to the purpose of the adoption statute. Because these parents are not similarly situated, RCW 26.33.120 does not violate equal protection.

McMahon argues that he is similarly situated to parents who may have their parental rights terminated through dependency proceedings, because he also faces a complete deprivation of the same fundamental right. But McMahon fails to explain how having the same interest at stake is sufficient to show that the two classes are similarly situated. For reasons we have already explained, it is not. Accordingly, we reject this argument.

### Expanded Protections for Incarcerated Parents

McMahon next argues that the trial court erred by failing to consider the expanded protections that the dependency statute provides to incarcerated parents. We disagree.

A recent amendment to the dependency statute added the following criteria for a trial court to consider before terminating an incarcerated person's parental rights:

> [W]hether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his

or her location and in accessing visitation or other meaningful contact with the child.

RCW 13.34.180(1)(f). These protections appear only in the dependency statute, not the adoption statute, so they do not apply in adoption proceedings. As we explained earlier in this opinion, McMahon is not similarly situated to parents in dependency proceedings. Therefore, the trial court's failure to consider the expanded protections was not error on that basis.

McMahon also argues that his case should be treated as a de facto dependency, because "it is merely by chance that this matter was a private adoption and not a dependency."[1] He cites no authority for this position. It does not appear that any adoption cases have imported these protections from the dependency statute. We decline to do so now.

### Due Process

McMahon claims that Washington's adoption statute violates substantive due process because it does not require a showing that the biological parent has harmed or presents a risk of harm to the child before terminating his or her parental rights. Because Washington courts have already held that a showing that the biological parent is unfit satisfies due process, we reject McMahon's argument.

As noted above, legislative enactments are presumed constitutional, and the burden of establishing that a statute is unconstitutional rests with the party challenging the statute. Skinner, 97 Wn. App at 114.

The right to parent one's child is fundamental. Any state law that would deprive a parent of that right must satisfy due process. In re H.J.P., 114 Wn.2d

---

[1] Br. of Appellant at 21.

522, 526-27, 789 P.2d 96 (1990). Washington's adoption statute allows for the termination of a biological parent's rights

> upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

RCW 26.33.120(1). The statute requires the court to find that the biological parent is unfit. H.J.P., 114 Wn.2d at 531. "Parental unfitness is established by showing that the nonconsenting parent 'has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations.'" H.J.P., 114 Wn.2d at 531 (quoting RCW 26.33.120(1)).

Our Supreme Court upheld the adoption statute against a substantive due process attack in In re H.J.P. 114 Wn.2d 522, 526-28, 789 P.2d 96 (1990). The court was guided by Santosky v. Kramer, which indicated that due process would likely require a finding of parental unfitness before terminating a parent's rights. 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Following H.J.P., our court has consistently held that requiring a showing of parental unfitness satisfies due process. See, e.g., Skinner, 97 Wn. App at 114 ("[T]he statute's focus on parental unfitness satis[fies] the constitutional standard."); In re Adoption of McGee, 86 Wn. App. 471, 477, 937 P.2d 622 (1997) ("[T]he ultimate inquiry required by due process for termination of the child-parent relationship, in all contexts, is parental unfitness.").

To support his argument, McMahon relies on In re Custody of Smith, 137 Wn.2d 1, 969 P.2d 21 (1998). There, the court struck down a third party visitation

7

statute because it did not require a finding that the child would be harmed by a denial of third party visitation rights. Smith, 137 Wn.2d at 20. Parental fitness was not an issue. The court rejected the contention that the best interest of the child was sufficient justification for State intervention "where the child's circumstances are otherwise satisfactory." Smith, 137 Wn.2d at 20. A child's circumstances are not otherwise satisfactory when his or her parents are unfit.

McMahon also relies on In re Parentage of C.A.M.A., 154 Wn.2d 52, 109 P.3d 405 (2005) and In re Welfare of Sumey, 94 Wn.2d 757, 621 P.2d 108 (1980). Neither case supports his argument. C.A.M.A., like Smith, addressed third party visitation against the wishes of a *fit* parent. 154 Wn.2d at 57. Sumey held that the State could impose a temporary residential placement of a child away from his or her parents even in the absence of a finding that the parents were unfit in order to protect the child from physical, mental, or emotional harm. 94 Wn.2d at 761-62, 765.

In short, RCW 26.33.120's failure to require a showing of harm or risk of harm does not render it unconstitutional.

### Termination of McMahon's Rights

McMahon argues that if the adoption statute is constitutionally sound, the trial court erred in its application of the statute. Specifically, he contends that there was insufficient evidence to support the trial court's conclusions that McMahon was currently unfit and that the termination of McMahon's rights was in C.T.K.M.'s best interest. We hold that the uncontested findings of fact sufficiently support both of the trial court's conclusions.

8

In reviewing the trial court's decision, we determine if there is substantial evidence to support the trial court's findings of fact. State v. B.J.S., 140 Wn. App. 91, 97, 169 P.3d 34 (2007). Then we review de novo if the findings of fact support the conclusions of law. B.J.S., 140 Wn. App. at 97.

"This court must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Fiser, 99 Wn. App. 714, 719, 995 P.2d 107 (2000). Unchallenged findings of fact are verities on appeal. B.J.S., 140 Wn. App. at 97.

*Current Unfitness*

McMahon challenges the sufficiency of the evidence supporting the trial court's determination that he was currently unfit.[2] We uphold this conclusion.

"Parental unfitness is established by showing that the nonconsenting parent 'has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations.'" H.J.P., 114 Wn.2d at 531 (quoting RCW 26.33.120(1)). Parental obligations consist of the following:

> "(1)[E]xpress love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance."

H.J.P., 114 Wn.2d at 531 (alteration in original) (quoting In re Adoption of Lybbert, 75 Wn.2d 671, 674, 453 P.2d 650 (1969)). The trial court may consider a parent's

---

[2] McMahon claims that the trial court violated his due process rights. A trial court's termination of a parent's rights *without* a finding of current unfitness would violate that parent's due process rights. See In re Welfare of A.B., 168 Wn.2d 908, 920, 232 P.3d 1104 (2010). However, McMahon is not alleging that the trial court failed to make the required finding. Br. of Appellant at 15.

past behavior when determining whether the parent is unfit. McGee, 86 Wn. App. at 478. But it must find that the parent is *currently* unfit. A.B., 168 Wn.2d at 920-21.

Here, the trial court found "that at this specific time Mr. McMahon is not a fit and proper parent."[3] The court's unchallenged findings of fact indicate that McMahon had no contact with C.T.K.M. for the first five years of his life; did not provide C.T.K.M. with any religious or social guidance; and had not provided an adequate domicile for his older children before he was incarcerated. The court had questions "regarding the credibility of Mr. McMahon" and specifically found that "McMahon's own statements that he (1) expressed love and affection for [C.T.K.M.] and (2) expressed personal concern over the health, education, and general well-being of [C.T.K.M.] are not truthful."[4] To McMahon's credit, the trial court also found that McMahon paid child support to the best of his ability and had attempted to improve himself since his incarceration began. But with respect to both findings, the court also found that they did not "overcome [McMahon's] history of failing to perform" other parenting functions.[5] These findings strongly support the trial court's conclusion that McMahon was currently unfit.

McMahon argues that the trial court improperly considered his past behavior, especially when compared to his attempts to improve himself. It was proper for the trial court to consider, as it did, McMahon's past behavior. McGee, 86 Wn. App. at 478.

---

[3] Clerk's Papers (CP) at 28.
[4] CP at 21-22 (Findings of Fact (FF) 8, 11).
[5] CP at 25 (FF 34, 36).

McMahon also argues that the Dehnhoffs did not rebut his testimony that he loved and cared for C.T.K.M. However, rebuttal was unnecessary because the trial court did not accept McMahon's testimony.

### C.T.K.M.'s Best Interests

McMahon challenges the sufficiency of the evidence supporting the trial court's determination that it was in C.T.K.M.'s best interest to terminate McMahon's parental rights. We uphold this conclusion.

As set out above, the trial court may terminate a person's parental rights

> upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

RCW 26.33.120(1).

Here, the trial court concluded that "it is in the best interests of the minor child that Thomas McMahon's parental rights be terminated for the purposes of the adoption of [C.T.K.M.] by Tammy Dehnhoff and Timothy Dehnhoff."[6]

The trial court also made the following unchallenged findings of fact. C.T.K.M. has lived with Timothy and Tammy Dehnhoff since he was three days old. The Dehnhoffs are wonderful parents and have a great relationship with C.T.K.M. The Dehnhoffs are, from C.T.K.M.'s perspective, his parents. The expert who conducted the home study "highly recommended" the Dehnhoffs for adoption of C.T.K.M.[7] C.T.K.M. has formed close relationships with the Dehnhoffs' older

---

[6] CP at 29 (Conclusion of Law I).
[7] CP at 26-27 (FF 43-44).

children.

Combined with the conclusion that McMahon is an unfit parent, as discussed above, these facts are sufficient to show by clear, cogent, and convincing evidence that it is in C.T.K.M.'s best interest to have McMahon's parental rights terminated. Therefore, it was not error for the trial court to terminate McMahon's parental rights.

Affirmed.

Trickey, J

WE CONCUR:

Spearman, C.J.                    Cox, J.