# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 73712-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ROBERT SAMUEL JACOBS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 20, 2017 |
| | ) | |

MANN, J. — Robert Jacobs pleaded guilty to two counts of first degree child molestation for molesting E.C., the seven-year-old daughter of his live-in girlfriend. As part of Jacobs' sentence, the trial court imposed an unconditional prohibition on direct and indirect contact with minors. Jacobs contends the trial court abused its discretion by prohibiting future contact with his own biological minor children. Because it is unclear whether the trial court intended the prohibition on contact with Jacobs' biological children to be conditional after his release, we remand for clarification.

## FACTS

Jacobs lived with his girlfriend and her seven-year-old daughter E.C. In 2014, E.C. was interviewed by a child interview specialist. E.C. initially described Jacobs like

a stepfather. E.C. went on, however, to disclose that Jacobs sexually abused her multiple times over the course of more than a year.

The State charged Jacobs with four counts of first degree child molestation and one count of first degree child rape. Jacobs entered an Alford[1] plea to two counts of first degree child molestation. Under the terms of the plea agreement, the State indicated that it would recommend—as a condition of Jacobs' sentence—a lifetime ban on contact with E.C. and a ban on contact with "any minors without the supervision of a responsible adult who had knowledge of this conviction and sentence." The Department of Corrections prepared a presentence investigation on Jacobs for the court. This report recommended that Jacobs undergo a sexual deviancy evaluation and a sexual history review with a polygraph.

At sentencing, Jacobs informed the trial court that he had four biological children that resided with their mother. Jacobs testified that the youngest was a seven-year-old boy. Jacobs lamented the fact that his children were not permitted to contact him while the case was pending.

Jacobs was sentenced to two concurrent standard range sentences of 72 months to life. The trial court also followed the State's recommendation and imposed a lifetime ban on Jacobs' direct or indirect contact with E.C. and a ban on unsupervised contact with other minors. The sentence also included conditions for community custody. Because Jacobs' convictions were for qualifying sex offenses, the community custody conditions remain in effect for the maximum term of Jacobs' indeterminate sentence—life. RCW 9.94A.507. Jacobs' community custody conditions include a requirement

---

[1] North Carolina v. Alford, 400 U.S. 25, 91, S. Ct. 160, 27 L. Ed. 2d 162 (1970).

that within 30 days of release he obtain a sexual deviancy evaluation and follow all recommendations, including treatment. The community custody conditions also include an unconditional requirement that Jacobs have "no direct and/or indirect contact with minors."

## ANALYSIS

### I

The trial court has the authority to limit or prohibit a defendant's contact with minor children pursuant to RCW 9.94A.703(3)(b), (f), and RCW 9.94A.505(9). RCW 9.94A.703(3)(b) provides authority to order an offender to "refrain from direct or indirect contact with the victim of the crime or a specified class of individuals." RCW 9.94A.505(9) and RCW 9.94.703(3)(f) provide the sentencing court with authority to impose a "crime-related" prohibition. A "crime-related prohibition" means "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). A no-contact order is a crime-related prohibition. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 376, 229 P.3d 686 (2010).

The "imposition of crime-related prohibitions is necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the [case] and the offender." Rainey, 168 Wn.2d at 374-375. Thus, the appropriate standard of review is abuse of discretion. A court abuses its discretion if, "when imposing a crime-related prohibition, it applies the wrong legal standard. Rainey, 168 Wn.2d at 375.

A parent has a fundamental constitutional right to the "care, custody, and companionship of one's children." Rainey, 168 Wn.2d at 374. At the same time, it is

"well established that when parental actions or decisions seriously conflict with the physical or mental health of the child, the State has a parens patriae right and responsibility to intervene to protect the child." In re Welfare of Sumey, 94 Wn.2d 757, 762, 621 P.2d 108 (1980). Consequently, a sentencing court may place limitations on parenting rights "when reasonably necessary to further the State's compelling interest in protecting children." State v. Berg, 147 Wn. App. 923, 942, 198 P.3d 529 (2008); State v. Corbett, 158 Wn. App. 576, 598, 242 P.3d 52 (2010). "Such conditions must be 'sensitively imposed' so that they are reasonably necessary to accomplish the essential needs of the State and public order." Rainey, 168 Wn.2d at 375 (quoting State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008)).

II

Jacobs asserts that the trial court abused its discretion when it entered, as a condition of his community custody, a lifetime prohibition on Jacobs' direct and indirect contact with his biological minor children. He argues that the court's decision was unreasonable because the court imposed the condition after it acknowledged that it had insufficient information to make the decision.

We agree that the condition banning all direct and indirect contact with minors, including Jacobs' biological children lacks any explanation for such a stringent restriction and therefore, as written, is unreasonable. For example, Jacobs' son was seven years old at the time of sentencing. If the Indeterminate Sentencing Board allows Jacobs' release near the minimum sentence of 72 months, his son will be approximately 13 years old. The condition, as written, would therefore prohibit all direct and indirect contact between Jacobs and his son until his son turned 18—up to 5 years after Jacobs'

-4-

release. As written, the condition does not allow for supervised visits. Nor is the condition related to, or dependent upon, the outcome of the required sexual deviancy evaluation, possible treatment, or the opinion of the treatment provider. If that was the court's intent, the condition deprives Jacobs of his right to parent and appears not to have been "sensitively imposed" and "reasonably necessary to accomplish the essential needs of the State." Rainey, 168 Wn.2d at 375.

Berg is instructive. Edward Berg lived with Sharma Ayers, their 2-year-old daughter, A.B., and Ayer's 14-year-old daughter, A.A., and 10-year-old son. After A.A. reported that Berg had sexually abused her, Berg was charged and convicted of one count of third degree child rape and two counts of third degree child molestation. As a condition of his sentence, the court prohibited contact with "[a]ny female minors without supervision of a responsible adult who has knowledge of this conviction." Berg, 147 Wn. App. at 930. Berg challenged the condition because it deprived him of unsupervised contact with his biological daughter. We affirmed the condition because Berg lived with A.A. and committed the abuse at home and thus an "order restricting contact with other female children who lived in the home was therefore reasonable to protect those children from the same type of harm." Berg, 147 Wn. App. at 944. We concluded also that the order was sufficiently narrow:

> The order is also sufficiently tailored to the crime. Even though it restricts all forms of contact, not just physical contact, it addresses the potential for the same kind of abuse at issue here, which Berg was able to achieve by exploiting a child's trust in him as a parental figure. Prohibiting Berg from having any unsupervised contact with A.B. prevents him from again fostering this kind of trust and putting her at the same risk of harm.

Berg, 147 Wn. App. at 944.

-5-

Corbett is also instructive. Edwin Corbett lived with his wife Kyla and Kyla's six-and-a-half year old daughter J.O., and her three-and-a-half year old son, D.O. Corbett had two biological children of his own that resided with their mother. After J.O. reported that Corbett sexually abused her Corbett was charged and convicted with four counts of first degree child rape. Corbett, 158 Wn. App. at 583. Corbett's sentence included a condition prohibiting "prolonged physical contact" with children under the age of 18 and a condition prohibiting contact with "any minor" without prior approval of his community corrections officer and sexual deviancy treatment provider.

Corbett challenged these conditions insofar as they prohibited his contact with his biological minor children. Corbett, 158 Wn. App. at 597. The Corbett court, however, likened Corbett's conduct to Bergs: "Just as Berg did, Corbett abused his parenting role by sexually abusing a minor in his care." Corbett, 158 Wn. App. at 599. Relying on Berg, the court affirmed the conditions on appeal concluding: [t]he no-contact order is reasonably necessary to protect Corbett's children because of his history of using the trust established in a parental role to satisfy his own prurient desire to sexually abuse minor children." Corbett, 158 Wn. App. at 599.

While Jacobs, like Berg and Corbett, also abused his parenting role by abusing a minor in his care, the condition imposed on Jacobs' sentence goes beyond the conditions imposed in both Berg and Corbett. Berg was prohibited only from unsupervised conduct with female minors. Thus, Berg was free to have supervised contact with his biological daughter. Corbett was prohibited from "prolonged physical contact," and from other contact with minors without approval of his community corrections officer and treatment provider. Thus, Corbett was allowed "brief" physical

contact and other contact if approved. Jacobs, however, is prohibited from all indirect or direct contact with his biological minor children—including supervised contact. Moreover, Jacobs' sentence prohibits direct and indirect contact with his biological minor children even if subsequently approved by his sexual deviancy treatment provider. As written, the prohibition on all direct and indirect contact with minors during Jacobs' community custody goes too far.

It is not clear, however, that a complete prohibition on direct and indirect contact during Jacobs' community custody was the trial court's intent.[2] During sentencing, the court acknowledged that it did not have enough information to determine Jacobs' risk to reoffend. The court explained "I do not have sufficient sexual history of Mr. Jacobs and including the polygraph and basically the assessment that would normally occur in this type of case and sometime will occur." And more importantly, with respect to Jacobs' future contact with his own children, the court appeared to leave the issue open for future consideration:

> Now, with regard to [Jacobs'] own children, I'm satisfied after there's
> sufficient evaluation of his circumstances that the contact with his children
> may or may not be authorized. But at this point, there is not . . . sufficient
> information that this Court can make the determination.
>
> . . . .
>
> One of the recommendations that the Department has clearly indicated,
> they will require a sexual deviancy evaluation with a State-certified
> therapist, approved by the community corrections officer and follow any
> recommendations. So at this point, there will be some further evaluation
> and testing to determine what the risk is of Mr. Jacobs to others and
> continued need for treatment.

---

[2] We also note that the court allowed Jacobs' supervised contact with minors during his incarceration. The court did not explain why supervised contact with Jacobs' biological minor children after his release would not be appropriate.

There is an ambiguity between the trial court's verbal comments and its judgment and sentence. The court's verbal comments appeared to leave open the possibility for Jacobs to have future contact with his biological children based on the results of a sexual deviancy evaluation. The judgment and sentence, however, appears to permanently prohibit direct or indirect contact with Jacobs' biological minor children. We believe remand is appropriate for clarification.

On remand, the trial court should clarify: (1) whether it intended an unconditional prohibition on Jacobs having direct and indirect contact with his biological minor children, and if so why, or (2) whether it intended to leave open the possibility for Jacobs to have future supervised contact with his biological minor children based on the results of his sexual deviancy evaluation, and the recommendation of his community corrections officer and treatment evaluator.

## CONCLUSION

We remand for clarification.

_____

WE CONCUR:

_____

_____